479 So.2d 810 (1985)
TECHNICABLE VIDEO SYSTEMS, INC., Appellant,
v.
AMERICABLE OF GREATER MIAMI, LTD. and Miami Tele-Communications, Inc., Appellees.
No. 84-1782.
District Court of Appeal of Florida, Third District.
December 10, 1985.
*811 Henry Thompson, Miami, for appellant.
Shutts & Bowen and Stephen B. Gillman and Lee D. Mackson, Myers, Kenin, Levinson, Frank & Richards and William M. Grodnick and James Wing, Miami, for appellees.
Before SCHWARTZ, C.J., and NESBITT and PEARSON, DANIEL S., JJ.
NESBITT, Judge.
Technicable Video Systems, Inc. (Technicable) appeals an order dismissing its complaint with prejudice. We affirm in part and reverse in part.
City of Miami Ordinance No. 9332 grants Miami Tele-Communications, Inc. (MTC) and Americable of Greater Miami, Ltd. (Americable) a nonexclusive license to operate and maintain a cable television system within the City of Miami (City). Section 1106 of the ordinance is entitled "Minority business enterprise participation." This section requires the licensee to "make reasonable and good faith efforts to procure from or use, on an annual basis during the term of the license, qualified minority business enterprises, ... for twenty (20) per cent of the total dollar amount of any and all contracted expenditures by the licensee." The section also establishes a presumption that the "twenty (20) per cent figure shall be allocated equally between black-and hispanic-owned minority business enterprises."
Technicable is a 100% black-owned business and, thus, qualifies as a minority business enterprise (MBE) which, under the license, is defined as a business at least 51% of which is owned by minorities. Technicable alleges in its complaint that it has tried on numerous occasions to engage MTC and Americable in negotiations for an agreement to provide goods and services necessary to the execution of the license. Technicable alleges that such attempts have been futile and that the defendants are presently engaged in the construction of the cable system without the required minority business enterprise participation.
Technicable alleges that the defendants' failure to make reasonable and good faith efforts to meet the 20% requirement is a breach of the agreement with the City and that it, as a third-party beneficiary of the agreement, is entitled to relief. Technicable also attempts to state a cause of action under 42 U.S.C. § 1983 for a violation of its civil rights and prays that the trial court order the defendants to engage its services or, in the alternative, award it damages for income lost over the fifteen-year period of the license.
The defendants' motion to dismiss for failure to state a cause of action was granted with prejudice.
When a contract creates a right in favor of a third person, it is presumed that the parties intended to confer a benefit on him and he may sue for breach of the contract. Hialeah Hospital, Inc. v. Raventos, 425 So.2d 1205 (Fla. 3d DCA 1983); see also Marianna Lime Products Co. v. *812 McKay, 109 Fla. 275, 147 So. 264 (1933) (when a contract manifests an intent to benefit a third party, that party may sue for breach of the contract). It is not necessary that the third party be specifically named. It is sufficient if the claimant is a member of the limited class which was intended to benefit from the contract. Organization of Minority Vendors, Inc. v. Illinois Central Gulf Railroad, 579 F. Supp. 574 (N.D.Ill. 1983); Western Union Telegraph Co. v. Massman Construction Co., 402 A.2d 1275 (D.C.Ct.App. 1979); Just's Inc. v. Arrington Construction Co., 99 Idaho 462, 583 P.2d 997 (1978); Oil Capital Racing Association v. Tulsa Speedway, Inc., 628 P.2d 1176 (Okla. Ct. App. 1981). Nor do the third-party beneficiary's enforcement rights depend on the contract having been made solely for its benefit. Organization of Minority Vendors, 579 F. Supp. at 597.[1]
In Organization of Minority Vendors, the railroad defendants were required, as part of their funding agreements with the federal government under The Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act), 45 U.S.C. §§ 801-855, to formulate affirmative action plans designed to increase MBE participation in their enterprises. They formulated plans which established 15% MBE participation as a goal. Those plans were incorporated into the funding agreements. The plaintiff, a group of black-and hispanic-owned MBE's, sued on a third-party beneficiary theory to enforce the affirmative action provisions of the funding agreements. They alleged that the railroads breached the funding agreements by practicing discrimination and failing to achieve 15% MBE participation and sought injunctive relief and damages.
Despite the fact that the primary objective of the 4-R Act was to revitalize the nation's rail system, the court denied the railroad's motion to dismiss for failure to state a cause of action. The court found it difficult to imagine how the funding agreements could have more clearly expressed an intention to directly benefit MBE's and allowed the contract claim to stand. 579 F. Supp. 596-601. We find likewise with regard to the claim at issue in the present case.
Section 1106 of the license expressly requires a reasonable and good faith effort to include MBE's in a specific percentage of the total dollar amount of contracted work. It cannot be seriously doubted that this provision was intended to directly benefit MBE's. The fact that the contract as a whole was intended to benefit city residents by providing them with cable T.V. does not negate the lucid expression of an *813 intent to benefit MBE's by allowing them a hand in setting up and maintaining the system.[2],[3]
Americable and MTC argue that the license provides for an exclusive enforcement procedure. While it is true that the ordinance provides mechanisms by which the City Manager may enforce its provisions, the license does not provide that such mechanisms are the exclusive means of enforcement. In fact, Article X of the license, which provides for the assessment of penalties, specifically indicates in section 1005(f) that "[n]othing herein is intended as a limitation on the extent of any legal liability of the licensee." Clearly, the licensee is subject to liability to anyone possessing rights created by the license. Allowing such an action does not interfere with the City's enforcement authority, as the established mechanism is available should the City elect to utilize it. Technicable is simply seeking judicial enforcement of a right which the parties clearly intended to create.
The complaint alleges that the parties to the license intended to benefit a particular class, that Technicable is a member of that class and that the license has been violated by a breach of those provisions intended to benefit MBE's. These allegations are sufficient to state a cause of action on a third-party beneficiary theory, especially in light of the fact that the law presumes the parties intended to confer a benefit on the MBE's, which presumption is, as yet, unrebutted. Hialeah Hospital, 425 So.2d at 1206. Consequently, it was error to dismiss that count of the complaint pleading a third-party beneficiary theory.
The license provision at issue is obviously an attempt to achieve a fair and delicate balance among potentially conflicting goals; that is, the socially enlightened and laudable goal of providing MBE's with business opportunities, the government's goal of making cable television available to its citizens at a reasonable price, and the defendant's goal of making a reasonable profit. The parties did not attempt to accomodate only the interests of the MBE's by mandating that a specific percentage of MBE's be procured regardless of cost or the MBE's ability. The license requires that the licensee make reasonable and good faith efforts to procure qualified MBE's. In light of this requirement, it is appropriate to emphasize that Technicable has the burden of demonstrating that it is a qualified MBE. By qualified, we mean competent to perform the task contracted for in a reasonably workmanlike and timely fashion at a competitive, though not necessarily the lowest, price.[4] The defendants, on the other hand, may avoid liability by producing evidence demonstrating that they in fact made reasonable and good faith efforts to meet the goal of 20% MBE participation.[5] Whether any of the parties *814 can meet their respective burdens on these factual issues remains to be seen.
Technicable pled a 42 U.S.C. § 1983 action in the alternative. We hold that the plaintiff cannot state such a cause of action and affirm the dismissal of that portion of the complaint. See Cox v. Athena Cablevision, 558 F. Supp. 258 (E.D.Tenn. 1982); see also Peterson v. Lehigh Valley District Council, 453 F. Supp. 735, 738 (E.D.Pa. 1978) (state's failure to impose sanctions for violation of a contract's anti-discrimination clauses is not state action for purposes of a § 1983 claim), vacated on other grounds, 676 F.2d 81 (3d Cir.1982).[6]
Affirmed in part, reversed in part and remanded for further proceedings.
NOTES
[1] There are other public contract cases allowing third-party beneficiary actions. Holbrook v. Pitt, 643 F.2d 1261, 1273 (7th Cir.1981) (tenants third-party beneficiaries of contract between landlord and Department of Housing and Urban Development [HUD]); Owens v. Haas, 601 F.2d 1242, 1250 (2d Cir.) (prisoner third-party beneficiary of contract between county and Bureau of Prisons), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); Dillon v. AFBIC Dev. Corp., 420 F. Supp. 572 (S.D.Ala. 1976) (house purchaser third-party beneficiary of federal nondiscrimination agreement with real estate agent), modified, 597 F.2d 556 (5th Cir.1979); Zigas v. Superior Court of State of California, 120 Cal. App.3d 827, 174 Cal. Rptr. 806 (Ct.App. 1981) (tenants third-party beneficiaries of contract between landlord and HUD), cert. denied, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982); COAC, Inc. v. Kennedy Eng'rs, 67 Cal. App.3d 916, 136 Cal. Rptr. 890 (Ct.App. 1977) (construction company third-party beneficiary of contract between water district and engineering company); Western Union Telegraph Co. (telegraph company third-party beneficiary of contract between Washington Mass Transit Authority and construction company); but see Perry v. Housing Auth., 664 F.2d 1210, 1218 (4th Cir.1981) (tenants not intended beneficiaries of agreement between HUD and housing authority); Falzarano v. United States, 607 F.2d 506 (1st Cir.1979) (no third-party beneficiary action based on contract between landlord and HUD); Chaplin v. Consolidated Edison Co., 579 F. Supp. 1470 (S.D.N.Y. 1984) (no third-party beneficiary action based on provision of contract with federal government prohibiting discrimination against handicapped); Martinez v. Socoma Companies, 11 Cal.3d 394, 521 P.2d 841, 113 Cal. Rptr. 585 (1974) (unemployed persons only incidental beneficiaries of economic revitalization agreement between private companies and the federal government). See generally, Block, Enforcement of Title VI Compliance Agreements by Third Party Beneficiaries, 18 Harv.C.R.-C.L.L. Rev. 1 (1983).
[2] The license also evinces an intent to benefit minorities in sections 1102 (nondiscrimination provision), 1103 (requiring establishment of an affirmative action plan to promote equal employment opportunities), 1104 (requiring employment training programs, particularly for unskilled and semiskilled minority youth) and 1107 (requiring good faith efforts to attract minority investors). Additionally, section 704 (12) requires the licensee to report to the city manager regarding achievements in affirmative action and MBE participation.
[3] We would reach the same conclusion by application of the Restatement (Second) of Contracts §§ 302 and 313(1) (1981) because the recognition of a right to performance effectuates the intention of the parties and the circumstances indicate that the promisee intended to give the beneficiary the benefit of the promised performance.
[4] If the contract calls for supplying goods, the same general principles apply. The MBE must be capable of supplying goods of reasonable quality which are fit for the purpose intended and priced competitively. We emphasize that to be qualified the MBE need not offer the most outstanding contract in every regard. While the MBE must indeed be qualified, it is sufficient if the work or goods offered are commercially reasonable and competitively priced.
[5] Because the knowledge and evidence of the efforts made are peculiarly in the hands of the defendant, we find such a burden appropriate. Allstate Finance Corp. v. Zimmerman, 330 F.2d 740 (5th Cir.1964). See generally 31A C.J.S. Evidence § 113 (1964).
[6] Because the question is not before us, we express no opinion on the plaintiff's ability to state a cause of action under 42 U.S.C. § 1981. See Organization of Minority Vendors, 579 F. Supp. at 591.