**C. Lamont SMITH and The Black Movie Channel, LLC, a Colorado limited liability company, Plaintiffs–Appellants,**

v.

**TCI COMMUNICATIONS, INC., f/k/a Tele–Communications, Inc.; Mile–Hi Cable Partners, L.P., d/b/a TCI of Colorado, Inc.; and Steven Santamaria, an individual, Defendants–Appellees,**

Liberty Media Corporation, a Colorado corporation; Encore Media Corporation, a Colorado corporation; Black Entertainment Television, a District of Columbia corporation; Media Management Group, Inc., f/k/a Burks, Butler & Esposito, d/b/a Burks/Butler, a Colorado corporation; and Virginia Butler, an individual, Defendants.

No. 98CA0257.

Colorado Court of Appeals, Div. V.

June 10, 1999.

Williams, Youle & Koenigs, P.C., Robert E. Youle, Dennis J. Herman, Brian G. Eberle, Denver, Colorado, for Defendants–Appellees.

Bostrom, Sands & Sander, P.C., Richard G. Sander, Denver, Colorado; Kohn, Swift & Graf, P.C., George W. Croner, Philadelphia, Pennsylvania, for Plaintiffs–Appellants.

Opinion by Judge CRISWELL.

Plaintiffs, C. Lamont Smith and The Black Movie Channel, L.L.C. (TBMC), appeal the judgment entered by the trial court under C.R.C.P. 54(b) in favor of defendants TCI Communications, Inc. (TCI), Mile–Hi Cable Partners, L.P. (Mile–Hi), and Steven Santamaria, dismissing plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation, unjust enrichment, and breach of fiduciary duty, and the ruling that they could not recover treble damages under their Colorado Antitrust Act claim. We affirm the dismissal of all of these claims, except the claims for misappropriation and unjust enrichment, and as to the treble damages ruling, we dismiss the appeal.

Mile–Hi holds a franchise to provide cable and television service within the City and County of Denver pursuant to an agreement entered into by its predecessor-in-interest. The agreement establishes certain programming, service, and design specifications for the cable system operator.

The agreement requires that, as part of the programming and service specifications, the franchisee provide channel production equipment and money for the development of an Hispanic entrepreneurial channel and a black entrepreneurial channel (BEC). Specifically, the franchisee is required:

> To provide a total of more than one million dollars ($1,000,000.00) in loans, in-kind services, and equity investments for developing a hispanic entrepreneurial channel and a black entrepreneurial channel. The company also will commit five hundred thousand dollars ($500,000.00) to the formation of a business development company to assist minority-owned small businesses.

Plaintiffs allege that Mile–Hi has never provided any equipment, facilities, services, loans, or funding to develop or to support a BEC as required by the agreement, nor has it provided any funds for the formation of a business development company to assist minority-owned small businesses. In addition, they allege that, several years ago, Smith created a programming concept for a 24-hour, seven-day-a-week cable or satellite premium channel to broadcast movies made by or featuring African–Americans, as well as educational and community-oriented programming of great interest to both the Hispanic and black communities. Smith alleges that he formed TBMC for purposes of further developing his programming and business concepts in compliance with the BEC provisions of the agreement.

Smith asserts that he submitted a proposal for the establishment and operation of TBMC as a BEC to an entity that was purportedly acting as Mile–Hi's agent. He asserts that, several days after he submitted

this proposal, defendants announced that they were launching a channel devoted to movies starring African–American performers. When Smith expressed his concern about this announcement to Mile–Hi, it returned his proposal and refused to discuss the matter with him.

Thereafter, plaintiffs filed this action against defendants, as well as several other entities not parties to this appeal, asserting the various claims for relief noted above. Defendants moved to dismiss the breach of contract and breach of covenant claims and to have the court determine that plaintiffs could not recover treble damages under the Colorado Antitrust Act. The trial court granted this motion. Defendants then moved for a judgment on the pleadings with respect to the claims for misappropriation, unjust enrichment, and breach of fiduciary duty. That motion was also granted.

The trial court certified its orders of dismissal as final judgments under C.R.C.P. 54(b), and it is from those judgments that plaintiffs appeal.

### I.

We first reject plaintiffs' contention that the trial court erred by dismissing their claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

Plaintiffs are not parties to the agreement between Mile–Hi and Denver. The trial court concluded that they also are not direct third-party beneficiaries of that agreement, but that the provisions respecting a BEC were for the benefit of the public generally. Hence, it concluded that plaintiffs lack standing to pursue their claims of contract breach and breach of the covenant of good faith and fair dealing. Plaintiffs assert that they alleged facts sufficient to demonstrate that they were direct third-party beneficiaries. We are not persuaded.

■ A third party who is not a party to an agreement may enforce one or more of the obligations created by that agreement if that third party is intended by the parties to be a direct beneficiary. Such intent need not be expressed in the agreement itself, but it

may be evidenced by the terms of the agreement, the surrounding circumstances, or both. *E.B. Roberts Construction Co. v. Concrete Contractors, Inc.*, 704 P.2d 859 (Colo. 1985); *Villa Sierra Condominium Ass'n v. Field Corp.*, 878 P.2d 161 (Colo.App.1994).

■ Further, it is not necessary that the third party be specifically referred to in the agreement. It is sufficient if the claimant is a member of the limited class that was intended to benefit from the contract. *Technicable Video Systems, Inc. v. Americable*, 479 So.2d 810 (Fla.App.1985); *Organization of Minority Vendors, Inc. v. Illinois Central Gulf R.R.*, 579 F.Supp. 574 (N.D.Ill.1983).

In *Technicable Video Systems, Inc. v. Americable, supra*, a city had granted a license to the defendant to operate and maintain a cable television system. One provision of that license required the licensee to make reasonable and good faith efforts to use qualified minority business enterprises for 20% of all its contracted expenditures. The plaintiff there was a qualified minority business, as defined under the license, which sought to provide services to the licensee. It alleged that the defendant had failed to meet the 20% requirement and, therefore, had breached the pertinent provisions. Based upon the terms of this license and the nature of plaintiff's request, the court determined that plaintiff was a third-party beneficiary and, consequently, had standing to pursue a breach of contract claim.

In *Organization of Minority Vendors v. Illinois Central Gulf R.R., supra*, the defendants, as a condition of their funding agreements with the federal government, were required to formulate detailed affirmative action plans to increase the participation of minority business enterprises, as specifically defined, in the funded projects. The plans formulated were incorporated into the funding agreements and established specific percentage goals for participation by minority business enterprises. The plaintiffs, as such enterprises, charged the defendants with breach of the funding agreements based on their alleged non-compliance with the affirmative action plans. The court concluded that the terms of the funding agreements

demonstrated that they were intended for the direct benefit of a limited class, consisting of minority business enterprises as defined in federal regulations.

■ There are, however, substantial differences between the circumstances present in those cases and plaintiffs' allegations here.

First, the specific requirements here are that the franchisee must "provide . . . loans, in-kind services, and equity investments" to develop a BEC. However, there is no requirement that such loans, services, or investments must be provided to minority businesses, so long as their purpose is to develop a BEC.

Further, while plaintiffs allege that defendants have failed to comply with this provision, their complaint is not that they have applied for, and have been denied, any loan, service, or investment. Likewise, they have failed to assert that defendants' alleged failure to aid in the formation of a business development company to assist minority-owned businesses has damaged them in some manner.

Rather, the gist of plaintiffs' complaint is that defendants failed to use plaintiffs' services to establish a BEC, not that defendants failed to provide loans, or services, or investments to them. Hence, even if we were to assume, without deciding, that an applicant for such services might be considered a third-party beneficiary of this provision, plaintiffs' allegations do not implicate these provisions.

The terms of the agreement here do not evidence an intent directly to benefit plaintiffs as persons who seek to contract with defendants to establish a BEC. Nor do plaintiffs' allegations describe any circumstance surrounding its negotiation or execution that would provide such evidence.

We conclude, therefore, that the trial court did not err by dismissing plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing inhering therein.

## II.

■ We also disagree with plaintiffs that the trial court erred by dismissing their claim for breach of fiduciary duty, which was based upon a confidential relationship between plaintiffs and defendants.

■ A confidential relationship may give rise to a duty similar to the duty of a fiduciary, but the confidential relationship giving rise to that duty must have been established prior to the transaction that gives rise to the claim. *Nicholson v. Ash,* 800 P.2d 1352 (Colo.App.1990).

There is no allegation of any relationship between plaintiffs and defendants before the transaction upon which their claim is based. Hence, the trial court properly dismissed this claim.

## III.

We do agree with plaintiffs, however, that the trial court erred by dismissing their claims for misappropriation and unjust enrichment.

In dismissing these claims, the trial court determined that plaintiffs had failed to allege that their idea for a 24-hour premium cable channel featuring movies and other programs made by, featuring, or of interest to African-Americans was a novel idea. In doing so, it concluded that, to be misappropriated, an idea must be "novel."

For purposes of this appeal, we will assume, without deciding, that the trial court was correct in this conclusion and that plaintiffs' complaint did not allege that their idea for a 24-hour premium channel was a novel idea.

■ However, a claim for misappropriation need not allege novelty if the material appropriated is not simply an idea. A claim for misappropriation of business value may be established if a person appropriates a product of another's expenditure of labor, skill, and money. *Heller v. Lexton–Ancira Real Estate Fund, Ltd.1972,* 809 P.2d 1016 (Colo.App.1990), *rev'd on other grounds,* 826 P.2d 819 (Colo.1992). *See also International News Service v. Associated Press,* 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918)(unfair

competition to misappropriate material that has been acquired as the result of organization and the expenditure of labor, skill, and money, and which is saleable by complainant for money); *American Cyanamid Co. v. American Home Assurance Co.,* 30 Cal. App.4th 969, 35 Cal.Rptr.2d 920 (Cal.App. 1994) (misappropriation of another's competitive advantage when one business appropriates the organization or the expenditure of labor, skill, and money of another); *United States Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214 (Tex.App.1993).

▮▮▮ Plaintiffs' complaint alleges that they had invested substantial time, money, energy, and other resources in developing *"detailed business plans* and proposals for the creation of a BEC and the *implementation* of their idea for a Black movie channel." (emphasis supplied) Plaintiffs also allege that their proposal contained:

specific, unique, and confidential details as to the manner of implementation of the BMC, including *inter alia:* technical set-up, programming rights, sample weekday programming, sample weekend programming, and additional information regarding the projected size and make-up of the BMC market, the BMC's competition, advertising ideas, and projected pricing, budgets, revenues, and profits.

Hence, plaintiffs' allegation is not that a simple idea for a 24–hour BEC was misappropriated; they allege, rather, that specific and unique plans for implementing this idea, which required the expenditure of considerable time and money to develop, were what defendants misappropriated and profited from.

▮▮▮ In considering a motion for judgment on the pleadings, a court must construe the allegations of the pleadings strictly against the movant, and it must consider the allegations of the opposing party's pleadings as true. *Abts v. Board of Education,* 622 P.2d 518 (Colo.1980).

▮▮▮ A court should not grant such a motion unless the matter can be finally determined on the pleadings. *Connecticut General Life Insurance Co. v. A.A.A. Water-*

*proofing, Inc.,* 911 P.2d 684 (Colo.App.1995)(standard is essentially consistent with that employed in reviewing a motion to dismiss for failure to state a claim). *See Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095 (Colo.1995)(dismissal will be upheld only if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief).

Because plaintiffs' proposal that was allegedly submitted to defendants was not before the trial court and is not a part of this record, the specifics of their plan are not known. In its absence, however, we cannot conclude, as a matter of law, that the implementation plans devised by them were insufficiently specific so as to make it impossible for those plans to be misappropriated. Likewise, because plaintiffs' claim for unjust enrichment is based on the misappropriation of this plan, we also are unable to conclude that plaintiffs' claim for unjust enrichment fails as a matter of law.

Hence, the judgment dismissing plaintiffs' claims for misappropriation and unjust enrichment must be reversed.

### IV.

▮▮▮ After the parties' initial briefs were filed with this court, they were directed to file supplemental briefs upon the question whether the court's ruling that plaintiffs could not collect treble damages under their claim for violation of the Colorado Antitrust Act was an appealable order. In response, plaintiffs have conceded that such ruling did not dispose of an entire claim and that that ruling could not, therefore, be certified as a final judgment under C.R.C.P. 54(b). We agree. *See Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982).

Hence, any appellate review of that order must await the entry of a final judgment upon the underlying claim.

To the extent that plaintiffs seek review of the trial court's ruling respecting the award of treble damages under the Colorado Antitrust Act, this appeal is dismissed, without prejudice to a review of that ruling after an appropriate final judgment is entered by the

trial court. The judgment dismissing plaintiffs' claims for breach of contract, for breach of the implied covenant of good faith and fair dealing, and for breach of fiduciary duty is affirmed. The judgment dismissing plaintiffs' claims for misappropriation and unjust enrichment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views set forth in this opinion.

Judge ROTHENBERG and Judge TAUBMAN concur.