**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT DONCHEZ,

      Plaintiff-Appellant,

v.

COORS BREWING COMPANY, a Colorado
corporation; FOOTE, CONE & BELDING
ADVERTISING, a Delaware corporation,

      Defendants-Appellees.

No. 03-1462

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 99-RB-558)**

A. Bruce Jones (Craig M. J. Allely and Nicholas M. Billings with him on the briefs),
Holland & Hart LLP, Denver, Colorado, for the plaintiff-appellant.

K. Preston Oade Jr. (Richard L. Gabriel and Michael J. Hofmann with him on the brief),
Holme Roberts & Owen LLP, Denver, Colorado, for the defendants-appellees.

Before **BRISCOE**, **HARTZ** and **McCONNELL**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Plaintiff Robert Donchez filed suit against defendants Coors Brewing Company

(Coors) and Foote Cone & Belding Advertising, Incorporated (FCB), claiming they

violated the Lanham Act, federal common law, and Colorado state law by misappropriating for use in a national advertising campaign a unique beer-vending character he had created, as well as a related term, "beerman," that he alleged was associated with the character. The district court granted summary judgment in favor of defendants on all claims. Donchez appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

Donchez is a Colorado resident. In January 1993, he applied to become a beer vendor for the Colorado Rockies baseball team. The Rockies hired Donchez and assigned him badge number "0001," identifying him as the first licensed beer vendor in Rockies' history. In his work as a vendor, Donchez allegedly "created an image of a distinct, outspoken, quick-witted character" and named him "Bob the Beerman." Aplt. App. at 37. The "Bob the Beerman" character "used beer, peanuts and Cracker Jacks® as props to entertain crowds." Id. The "Bob the Beerman" character also used various catch phrases, including the following: "My favorite word in the English language: Beer! Two favorite words: Cold Beer! Three favorite words: Cold Beer Man!" Id. at 448. In the fall of 1993, Donchez filed for service mark protection for the "Bob the Beerman" character pursuant to Colorado law. Donchez' mark, "Bob the Beerman," was registered by the State of Colorado, under the class of "Education and Entertainment Services," on October 7, 1993. Id. at 327.

Acting as "Bob the Beerman," Donchez worked as a vendor not only at Rockies' baseball games, but also at "football, hockey and basketball events" in the Denver area and in other cities. Id. at 37. Donchez also "provided entertainment services . . . on television, radio and [in] print as well as appearing live at a number of charitable and other events" in the Denver area and other cities. Id. In 1994, Donchez authored a book titled "A View from the Stands: A Season with Bob the Beerman," that described his character's antics and experiences during his first season vending beer at Rockies' baseball games. Id. at 40. In 1995, Donchez "starred and collaborated in and co-directed a video production entitled 'Ultimate Bob: Vendors: A Profile in Courage.'" Id. at 40.

During the course of his work for the Rockies, Donchez "was encouraged by Steve Saunders, an employee of Coors, to contact Coors . . . to see if Coors would be interested in a promotional theme based upon" his "Bob the Beerman" character. Id. at 41. Saunders assisted Donchez in arranging a meeting with Integer Group, LLC (Integer), a company that performed local promotions work for Coors, in January 1996 in Golden, Colorado. During the meeting, Donchez suggested to Tom Hohensee, an Integer employee, that Coors should feature his "Bob the Beerman" character in an advertising campaign. In support of that suggestion, Donchez appeared in his Bob the Beerman costume and gave Hohensee a copy of his book and videotape. However, Coors and Integer ultimately decided not to enter into any type of contractual arrangement with

Donchez.[1]

In April 1997, Coors began a national television advertising campaign for its Coors Light product utilizing "many different actors and an actress portraying beer vendors." Id. at 279. The advertisements featured the vendors "interacting with the crowd in amusing ways at sporting events." Id. "Some of the vendors call[ed] themselves or [we]re referred to by customers as 'beerman,' or 'the beerman,' or 'Hey, beerman,' or 'Hey, beerstud.'" Id. The advertisements were produced by defendant FCB.

According to Donchez, friends, acquaintances, and fans at the Rockies' ballpark began making comments to him regarding the Coors advertising campaign. Some, according to Donchez, assumed Coors had purchased his character, or that Donchez was somehow affiliated with the Coors' advertising campaign, while a few assumed he was copying the Coors' advertisements.

On March 19, 1999, Donchez filed suit against Coors and FCB asserting claims for violation of the common law right of publicity, service mark infringement under Colorado law, common law service mark infringement, unfair competition in violation of the Lanham Act, violation of the Colorado Consumer Protection Act, unjust enrichment, and

---

[1] Following the January 1996 meeting, Coors was apparently interested in "signing [Donchez] to a personal services contract that would allow him to make appearances at sports bars and other on-premise locations on behalf of Coors" and that would allow him to exclusively sell Coors products at Rockies' baseball games. Id. at 541. That arrangement, however, was ultimately stymied by the State of Colorado's Liquor Enforcement Division.

unfair misappropriation and exploitation of business value. Following extensive discovery, defendants moved for summary judgment. On September 23, 2003, the district court granted defendants' motion with respect to all claims.

II.

Donchez contends the district court erred in granting summary judgment in favor of defendants on all his claims. In particular, Donchez contends the district court "usurped the role of the jury" by "ma[king] credibility assessments and weigh[ing] the evidence relevant to each of [his] claims." Aplt. Br. at 15. Further, Donchez contends the district court "decided disputed fact issues such as whether BEERMAN is generic both generally and as used by Defendants and whether Defendants' advertisements appropriated [his] likeness." Id. Lastly, Donchez contends the district court "extended its initial findings to [his] other state law claims . . . without properly analyzing the distinct elements and nature of these claims." Id.

We review de novo a district court's grant or denial of summary judgment, applying the same standard as the district court. See Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We "view the evidence, and draw reasonable inferences therefrom, in the light most favorable

to the nonmoving party." Combs v. PriceWaterhouseCoopers, LLP, 382 F.3d 1196, 1199 (10th Cir. 2004).

### *Service mark-related claims*

In the final pretrial order, Donchez characterized three of the claims in his complaint as being dependent on his service mark rights. These three claims included: service mark infringement under Colo. Rev. Stat. § 7-70-111 (the second claim for relief in the complaint); common law service mark infringement (the third claim for relief in the complaint); and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (the fourth claim for relief in the complaint). We address these claims in reverse order.

### *Unfair competition in violation of § 43(a) of Lanham Act*

"Section 43(a) of the Lanham Act, prohibiting the use of false designations of origin, protects against service mark infringement even if the mark has not been federally registered." U.S. Search, LLC v. U.S. Search.Com, Inc., 300 F.3d 517, 522 (4th Cir. 2002). To prevail in an action for unfair competition under § 43(a), "a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of [an identical or similar] mark is likely to cause confusion among consumers." Packman v. Chicago Tribune Co., 267 F.3d 628, 638 (7th Cir. 2001); see U.S. Search, 300 F.3d at 523. For the reasons that follow, we conclude Donchez has failed to present sufficient evidence to allow a reasonable jury to find in his favor on the first of these elements, and thus the district court properly granted summary judgment in favor of defendants.

6

Federal law defines a service mark to include "any word . . . or any combination thereof . . . used by a person . . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. To be protectable, "a mark must be capable of distinguishing the products [or services] it marks from those of others." Lane Capital Mgmt, Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999). "There are five different categories of terms with respect to the protection of a mark: generic, descriptive, suggestive, arbitrary, and fanciful." Id. The five categories have been succinctly described in the following manner:

> A mark is generic if it is a common description of products [or services] and refers to the genus of which the particular product [or service] is a species. A mark is descriptive if it describes the product's [or service's] features, qualities, or ingredients in ordinary language or describes the use to which the product [or service] is put. A mark is suggestive if it merely suggests the features of the product [or service], requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods [or services]. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.

Id.

These categories "reflect both the eligibility for protection and the degree of protection accorded" a particular mark. Id. "If a term is generic (the common name for a product or service), it is ineligible for protection" because "[t]he public has an inherent right to call a product or service by its generic name." U.S. Search, 300 F.3d at 523. "A descriptive mark may be eligible for protection, but only if it has acquired a 'secondary

7

meaning' in the minds of the public." Id. "Fanciful (made-up words expressly coined to serve as trade or service marks), arbitrary (common words applied in unfamiliar ways), and suggestive marks (words that connote, rather than describe, some quality or characteristic of a product or service) are inherently distinctive, and thus receive the greatest protection against infringement." Id.

The categorization of a mark is a factual question. See Courtenay Communications Corp. v. Hall, 334 F.3d 210, 215 (2d Cir. 2003); G. Heileman Brewing Co. v. Anheuser-Busch, Inc., 873 F.2d 985, 992 (7th Cir. 1989); Anheuser-Busch Inc. v. Stroh Brewery Co., 750 F.2d 631, 633 (8th Cir. 1984). Notably, however, "the fact-finder's own perception of the mark is not the object of the inquiry." Lane Capital Mgmt., 192 F.3d at 344. "Rather, the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is." Id.

Here, it is undisputed that defendants did not, in the course of the challenged advertising campaign, use the term "Bob the Beerman." Defendants did, however, repeatedly use the phrase "beerman" (or "beer man") in their campaign, and it is the use of that term which Donchez contends violated § 43(a) of the Lanham Act. Accordingly, the question we must address is how to classify that term for purposes of § 43(a). Because Donchez has never registered the term with the United States Patent and Trademark Office, it is his burden to demonstrate that it is protectable under § 43(a). See Courtenay Communications, 334 F.3d at 217; Ale House Mgmt, Inc. v. Raleigh Ale

8

House, Inc., 205 F.3d 137, 140 (4th Cir. 2000).

In his response to defendants' summary judgment motion, Donchez argued the term "beerman" was suggestive because he used it not only "for beer vending services," but also "to identify his entertainment and promotional services throughout Colorado." Aplt. App. at 340-41. Donchez further argued there was "at least a triable issue on whether hearing the term 'Beerman' require[d] some imagination to determine the actual nature of [his] entertainment services." Id. at 341. In support of his arguments, Donchez pointed to a single piece of evidence, i.e., a report prepared by one of his expert witnesses, Curtis Krechevsky, in which Krechevsky allegedly stated that

> it is my opinion that the . . . use of the term "BEERMAN" in connection
> with books and entertainment services was . . . use in a suggestive sense and
> not descriptively. As specifically regards entertainment services, I believe
> that a leap of imagination or mental effort is required to understand the
> nature of the covered services from the mark "BEERMAN."

Id. For whatever reason, however, Donchez has not included that report in his appellate appendix. Thus, we cannot consider the report and the statements included therein in determining whether there is a genuine issue of material fact regarding the classification of the term "beerman."[2] In turn, that leaves Donchez without any evidence to support his assertion that the term "beerman" is suggestive.[3]

---

[2] Even if Donchez had included that report in his appendix, we are not persuaded the statements therein would have been sufficient to create a genuine issue of fact concerning whether the term "beerman" is suggestive, rather than descriptive or generic.

[3] In his appellate reply brief, Donchez states, in a heading, that "'BEERMAN' IS SUGGESTIVE OF [HIS] ENTERTAINMENT AND PROMOTIONAL SERVICES."

In his appellate pleadings, Donchez argues, as he also did in district court, that the term "beerman" is "at least descriptive" and has acquired a secondary meaning when used in the context of entertainment and promotional services. Aplt. Reply Br. at 2. In support of his assertion that the term is descriptive rather than generic, Donchez points to three items of evidence: 1) documents and testimony indicating that prior to this lawsuit (in April 1997), Coors filed applications with the United States Patent and Trademark Office seeking trademark registration for the terms "beerman" and "hey.beer.man," and abandoned those applications after this lawsuit was filed; 2) the lack of any definitions of the term "beerman" in leading dictionaries; and 3) survey evidence regarding the public's view of the term "beerman."

Addressing these items of "evidence" in order, we conclude they carry little, if any, weight. With regard to the trademark applications filed by Coors in 1997, Coors was seeking trademark protection for the terms "beerman" and "hey.beer.man" only in connection with clothing (i.e., t-shirts and caps), printed materials, and beer. As applied to those three categories of products, the terms appear to be something other than generic or descriptive. However, the question at issue is how to classify the term "beerman" as applied to entertainment/promotional services, or more specifically a beer vending character. Coors' trademark applications, in our view, lend no support, one way or the

Aplt. Reply Br. at 2. However, the brief thereafter makes no arguments in support of this statement. Similarly, at oral argument Donchez made reference to the term being suggestive, but otherwise offered no explanation of that assertion.

10

other, with regard to the resolution of that question.

As for the fact that the term "beerman" does not appear in any leading dictionaries, it is true this type of evidence can, depending on the context, be relevant to the issue of "genericness." Mil-Mar Shoe Co. v. Shonac Corp., 75 F.3d 1153, 1158 (7th Cir. 1996). Defendants suggest, however, there is a rational explanation for the term "beerman" not appearing in any leading dictionaries: it is a composite term made up of two generic words that are, in fact, found in all dictionaries, i.e., "beer" and "man." Further, defendants argue, "[u]nlike combinations of generic words that have unexpected meanings – like 'Seven-Up,' . . . 'beerman' is 'nothing more than the sum of its parts.'" Aplee. Br. at 24. We are not persuaded that a jury could rationally find, based solely on the lack of dictionary definitions, that the term "beerman" is descriptive.

The last piece of evidence cited by Donchez concerns the results of a telephone survey conducted by defendants. Approximately 200 persons in the Denver area were asked "whether nine (9) different names," including the term "beerman," were "'common' name[s] or . . . 'brand' name[s]." Aplt. App. at 167. The term "beerman" "was recognized as a common or generic name by 75.9% of the" respondents. Id. at 176. Donchez, however, attempts to interpret the results in his favor by noting that several other terms, including "draft beer," "popcorn," "vendor," and "mascot," were found by a higher percentage of the respondents (i.e., from 90.1% to 95.6%) to be common or generic terms. Further, Donchez cites one of his own expert witnesses, Dr. Robert

11

Gulovson, who opined "there is a statistically significant difference between the responses obtained for 'beerman' and the [other] so-called common names in the survey." Aplt. App. at 268. Again, however, we are not persuaded that a rational trier of fact could find, based on Donchez's interpretation of the defendants' survey results, that the term "beerman" is descriptive rather than generic. In particular, the number of survey respondents classifying the term "beerman" as generic was clearly substantial. Further, there is no indication that the survey respondents were asked to classify the term "beerman" as applied to entertainment or promotional services.

Even assuming the evidence presented by Donchez was sufficient to allow a reasonable jury to find that the term "beerman" is descriptive rather than generic (when applied to entertainment or promotional services), we conclude he has failed to present sufficient evidence to allow a reasonable jury to find that the term has acquired a secondary meaning. "Secondary meaning exists only if most consumers have come to think of the word as not descriptive at all but as the name of the product [or service]." Packman, 267 F.3d at 639 (internal quotations omitted). A plaintiff may establish secondary meaning "through the use of direct evidence, such as consumer surveys or testimony from consumers." Flynn v. AK Peters, Ltd., 377 F.3d 13, 20 (1st Cir. 2004). A plaintiff may also

> establish secondary meaning for a name by presenting circumstantial evidence regarding: (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind,

12

between the name or mark and a particular product or venture.

Id. (internal quotations omitted).

In his opening appellate brief, Donchez does not point to any evidence in the record that would help establish secondary meaning for the term "beerman." We therefore turn, out of an abundance of caution, to Donchez' response to defendants' summary judgment motion, a copy of which is included in his appendix. In that response, Donchez cited four declarations which he described as coming from "members of the public within the Rocky Mountain region" and "identify[ing] the term BEERMAN with [his] entertainment and promotional services." Aplt. App. at 342. Donchez has included only two of those declarations in his appendix. One declaration is from an individual named Harold Beier who worked as an usher at Rockies' games. The other declaration is from an individual named Randy Holtz, a sports reporter for the Denver Rocky Mountain News. Although both Beier and Holtz describe Donchez' "Bob the Beerman" character as colorful and unique, we conclude their declarations are insufficient to create a genuine issue of fact on the secondary meaning issue. More specifically, we conclude the opinions of two people, both of whom regularly attend Rockies' games because of their jobs, are insufficient to establish the majority of the public (whether viewed locally, regionally, or nationally) has come to associate the term "beerman" with Donchez's character. In his response to defendants' summary judgment motion, Donchez also pointed to portions of three deposition transcripts in which witnesses allegedly stated

13

"that members of the public within the Rocky Mountain region kn[e]w [him] only by the name BEERMAN or BOB THE BEERMAN." Aplt. App. at 342. Donchez has not, however, included any of those deposition excerpts in his appendix. Thus, we conclude Donchez has failed to provide us with any evidence from which a reasonable jury could find in his favor on the secondary meaning issue.[4] In turn, we conclude he has failed to present sufficient evidence to allow a jury to find he has a protectable interest in the mark "beerman."

Donchez has failed to present sufficient evidence to create a genuine issue of fact regarding his unfair competition claim under § 43(a) of the Lanham Act. The district court properly granted summary judgment in favor of defendants on that claim.

*Common law trademark or service mark infringement*

The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act. Among other things, a plaintiff must establish a protectable interest in its mark, the defendant's use of that mark in commerce, and the likelihood of consumer confusion. See Int'l

---

[4] Donchez' appendix does include some circumstantial evidence of secondary meaning. In particular, there is some evidence in the record outlining how long he has used the terms "Bob the Beerman" and "Beerman," the different types of entertainment or promotional events where he has appeared, and his efforts at marketing himself by publishing a book, producing a videotape, and appearing on local and national television and radio shows. However, because Donchez has not pointed to any of this evidence in support of his assertion of secondary meaning, and because this evidence by itself does not establish how well known the marks are in the mind of the public, we conclude this evidence is not sufficient to create a genuine issue of material fact.

14

Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1248 (11th Cir. 2002). Because Donchez has failed to present sufficient evidence to establish a protectable interest in the term "beerman," we conclude the district court properly granted summary judgment in favor of defendants on Donchez' common law trademark infringement claim.

*Service mark infringement in violation of Colo. Rev. Stat. § 7-70-111*

To establish a violation of Colorado's service mark infringement statute, Colo. Rev. Stat. § 7-70-111(a), a plaintiff must establish, in pertinent part, that the defendant's use of the plaintiff's registered service mark "is likely to cause confusion, mistake, or deception as to the source or origin of such goods or services." The obvious problem for Donchez is that the uncontroverted facts establish defendants did not use the sole mark registered by him under Colorado law, i.e., "Bob the Beerman." The district court properly granted summary judgment in favor of defendants on this claim.

### Non-service mark claims

Donchez asserted four non-service mark claims against defendants: (1) violation of his "right of publicity"; (2) violation of the Colorado Consumer Protection Act (i.e., deceptive trade practice); (3) unjust enrichment; and (3) unfair misappropriation and exploitation of business value. Donchez contends the district court erred in granting summary judgment in favor of defendants on three of these claims (Donchez makes no mention in his appellate pleadings of his claim under the Colorado Consumer Protection

15

Act; presumably he has abandoned that claim[5]).  In particular, Donchez contends the

district court "extended its initial [factual] findings to" his claims for "unjust enrichment

and misappropriation of business value" "without properly analyzing the distinct elements

and nature of these claims."  Aplt. Br. at 15.  Defendants dispute Donchez' assertions and

argue, in addition, that his state law claims are preempted by federal copyright law.

For the reasons discussed below, we conclude Donchez has failed to present

sufficient evidence to survive summary judgment on any of these claims.  Accordingly,

we find it unnecessary to address the preemption issue raised by defendants.

*Violation of right of publicity*

"[S]ome courts . . . have recognized a 'right of publicity' which permits plaintiffs

to recover for injury to the commercial value of their identities."  Joe Dickerson &

Assoc., LLC v. Dittmar, 34 P.3d 995, 999 (Colo. 2001).  "The right of publicity is

designed to reserve to a celebrity the personal right to exploit the commercial value of his

own identity."  Landham v. Lewis Galoob Toys, Inc., 227 F.3d 619, 624 (6th Cir. 2000).

To date, the Colorado Supreme Court does not appear to have expressly recognized this

tort.  Assuming it would do so, a plaintiff such as Donchez would have to prove, in order

to establish a violation of his right of publicity, that the defendant, without his consent,

---

[5] Even if he has not abandoned the claim, we conclude there is no evidence in the record to establish that Coors "[k]nowingly ma[d]e a false representation as to the source, sponsorship, approval, or certification of goods, services, or property."  Colo. Rev. Stat. § 6-1-105(1)(b).  The district court properly granted summary judgment in favor of defendants on that claim.

16

used his likeness to the defendant's commercial advantage and that defendant's actions in this regard injured him.  See Allison v. Vintage Sports Plaques, 136 F.3d 1443, 1447 (11th Cir. 1998) (discussing similar tort under Alabama law); Newton v. Thomason, 22 F.3d 1455, 1460 n.4 (9th Cir. 1994) (discussing elements of right of publicity claim under California law); see also Landham, 227 F.3d at 622 (noting "case law on this right is exceedingly rare").

A review of the record on appeal indicates there are several reasons why Donchez cannot prevail on this claim.  First, Donchez has not presented any evidence indicating his own persona, as opposed to that of "Bob the Beerman," has any commercial value.  In other words, Donchez has not presented any evidence to establish that he, as opposed to the character he created, is a celebrity.  Second, and relatedly, Donchez is not claiming that Coors used his personal likeness to its commercial advantage.  Rather, Donchez is claiming that Coors used the term "beerman," as well as certain characteristics similar to his "Bob the Beerman" character, to its commercial advantage.  See Landham, 227 F.3d at 625 (noting "the focus of any right of publicity analysis must always be on the actor's own persona and not the character's").  Finally, a review of the Coors' commercials reveals that none of the beer vending characters portrayed therein bear a close resemblance to Donchez.  The district court properly granted summary judgment in favor of defendants on Donchez's right of publicity claim.

*Unjust enrichment*

17

"Unjust enrichment is a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." Martinez v. Colo. Dep't of Human Serv., 97 P.3d 152, 159 (Colo. Ct. App. 2003). To establish a claim for unjust enrichment, a plaintiff must demonstrate that "(1) at [his or her] expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying." Id. If a plaintiff can establish these elements, "the absence of an actual agreement to pay for the services rendered" is irrelevant. Id.

To the extent Donchez is claiming defendants misappropriated his Bob the Beerman character, the record contains insufficient evidence on which a jury could find in his favor. None of the beer vendors depicted in defendants' commercials reasonably could be mistaken for Donchez' Bob the Beerman character (particularly in terms of physical appearance). It is perhaps a closer question whether Donchez has presented sufficient evidence in support of his more general assertion that defendants used and benefitted from the idea of using a funny and colorful beer vending character to promote their products.[6] Ultimately, however, a review of record indicates there is, at best, only a minimal relationship between Donchez' alleged idea and the final series of advertisements produced and aired by defendants. Defendants' advertisements contain a

---

[6] Although defendants argue in their appellate brief that Donchez cannot prove either that his ideas were "novel" or that they were provided in confidentiality, neither of those appears to be a requirement under Colorado law for prevailing on a claim of unjust enrichment.

18

multitude of characters and themes, none of which were specifically pitched to defendants by Donchez. In other words, a substantial amount of independent work clearly went into creating and producing the challenged advertisements. Thus, a jury reasonably could not conclude the circumstances were such that it would be "unjust" for defendants not to compensate Donchez for his "idea."

*Unfair misappropriation/exploitation of business value*

Colorado law recognizes a claim for misappropriation of business value. See Smith v. TCI Communications, Inc., 981 P.2d 690, 694 (Colo. Ct. App. 1999). Generally speaking, such a claim "may be established if a person appropriates a product of another's expenditure of labor, skill, and money." Id.

Here, Donchez' complaint described his claim for misappropriation of business value in the following manner. First, Donchez alleged that he had "expended substantial time, effort and money in creating and building consumer recognition in the highly distinct and novel character named THE BEERMAN and the marks BOB THE BEERMAN and THE BEERMAN." Aplt. App. at 47. Second, Donchez alleged defendants "unfairly appropriated the highly distinct and novel character named THE BEERMAN and the mark THE BEERMAN, and Plaintiff's specific ideas of crafting a promotional campaign around such a character and mark, without compensating Plaintiff." Id. at 47-48. Third, Donchez alleged defendants "enjoyed and appreciated substantial benefits, including economic benefits, from their unfair appropriation of the

19

materials and ideas created and presented to them by Plaintiff." Id. at 48. Lastly, Donchez alleged he "suffered, and continues to suffer, commercial harm as a result of the misappropriation." Id.

We again conclude Donchez has failed to present sufficient evidence to survive summary judgment. As previously noted, none of the beer vendors depicted in defendants' commercials reasonably could be mistaken for Donchez' Bob the Beerman character (particularly in terms of physical appearance). Further, although defendants did, in fact, use the term "beerman" in their commercials, a reasonable jury could only find they did so predominantly, if not exclusively, in a generic or descriptive fashion to refer to the various beer vendors that appear in its commercials. Thus, we conclude the evidence presented by Donchez was insufficient to allow a reasonable jury to conclude defendants appropriated either his Bob the Beerman character or the term "beerman."

To the extent Donchez is alleging defendants appropriated the more general idea of implementing a national advertising campaign using a funny and colorful beer vending character, defendants argue this idea is not "novel," and thus cannot serve as the basis for an appropriation of business value claim. It is not entirely clear under Colorado law whether an idea must be novel to be actionable (the trial court in TCI Communications reached this conclusion, but the Colorado Court of Appeals assumed, without deciding, that this was a correct holding). Thus, we must predict how the Colorado Supreme Court would rule if faced with the issue. See Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d

1234, 1240 (10th Cir. 2003). In light of the trial court's ruling in TCI Communications,

and because most other states appear to require an idea to be novel before its

misappropriation can be actionable, e.g., Johnson v. Benjamin Moore & Co., 788 A.2d

906, 914-15 (N.J. Super. Ct. App. Div. 2002); Alevizos v. John D. and Catherine T.

MacArthur Found., 764 So.2d 8, 12 (Fla. Dist. Ct. App. 1999); Oasis Music, Inc. v. 900

U.S.A., Inc., 614 N.Y.S.2d 878, 882 (N.Y. App. Div. 1994); Jones v. Turner Broad. Sys.,

Inc., 389 S.E.2d 9, 11 (Ga. Ct. App. 1989), it is reasonable to conclude the Colorado

Supreme Court would likewise adopt such a requirement.[7] To hold otherwise would seem

nonsensical, because it would allow plaintiffs to sue and prevail on the basis of existing

and commonly known ideas.

Reviewing the record on appeal, it is apparent that the general idea of using a

funny and colorful beer vending character to promote beer products is not, in fact, novel.

Indeed, defendants have produced uncontroverted evidence indicating such characters

have been used in the advertising industry to promote various beer products for more than

half a century. See Aplee. App. at 4 (indicating in the 1950s, a ballpark beer vendor

---

[7] It is also worth noting that misappropriation of business value falls within the scope of unfair competition law. See Harold R. Weinberg, Trademark Law, Functional Design Features, and the Trouble with Traffix, 9 J. Intell. Prop. L. 1, 8 n.26 (Fall 2001). "[T]he common-law tort of unfair competition has [generally] been limited to protection against copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source." Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 158 (1989). It would seem an illogical extension to hold that misappropriation of business value could encompass a commonly known idea.

21

appeared in a television commercial for Ballentine's Beer), (indicating Anheuser-Busch utilized a television commercial in 1995 "where a thirsty consumer yells 'Yo, beerman' to a departing beer vendor"), 5 (evidence that Coors itself "used a beer vendor known as 'Wally the Beerman' to promote its Coors Extra Gold brand"), 6 (evidence that "[a] former radio personality, Eddie Cantor, appeared in a print ad as a beer vendor selling Pabst Blue Ribbon" beer). We conclude Donchez' general idea of using such characters for a Coors' advertising campaign was not novel and cannot form the basis for an actionable "appropriation of business value" claim.

### *Defendants' Motion to Strike*

As a final matter, defendants have filed what they have termed a "MOTION TO STRIKE APPELLANT'S ALTERATION OF THE SUMMARY JUDGMENT RECORD ON APPEAL." In support of their motion, defendants argue that Donchez has submitted with his appendix a videotape containing a segment ("New & Improved 'Ultra Bob'") that was not submitted to the district court in connection with the summary judgment proceedings. Defendants further argue that Donchez has "inserted into the appendix two deposition excerpts [one from Gene Davis and one from Ronald King] that were never presented to the District Court." Mot. at 4. In light of the conclusions we have reached above, we deny defendants' motion as moot.

The judgment of the district court is AFFIRMED. Defendants' motion to strike is DENIED as moot. Defendants' motion to supplement the appendix with a complete

22

document is GRANTED.