FILED
United States Court of Appeals
Tenth Circuit

August 28, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THE JOHN ALLAN COMPANY,

Plaintiff - Appellant,

v.

THE CRAIG ALLEN COMPANY
L.L.C.; CRAIG ALLEN TATRO;
ERIK DAVID LESCHUK,

Defendants - Appellees.

No. 07-3193

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 05-CV-1150-MLB)**

---

Kenneth L. Bressler, Blank Rome LLP, New York, New York (Charles E. Millsap and Lyndon W. Vix, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas, with him on the briefs), for Plaintiff - Appellant.

Todd N. Tedesco, (James M. Armstrong with him on the brief), Wichita, Kansas, for Defendants - Appellees.

---

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.    Introduction

The John Allan Company initiated a trademark infringement lawsuit against The Craig Allen Company pursuant to the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).  The case was tried before the district court.  It concluded the use of the name "Craig Allen's" for a grooming salon in Wichita, Kansas did not infringe on the mark "John Allan's."  Exercising jurisdiction pursuant to 28 U.S.C. § 1291 we **reverse** and **remand** for further proceedings.

## II.    Background

In 1988, John Allan Meing opened a men's grooming salon near Wall Street in New York City.  The salon, John Allan's, was designed to provide salon services for men in a club-like environment.  Since that time, the company has grown.  At the time of the bench trial, The John Allan Company operated two club locations and two smaller non-clubs in New York City.  The salons are furnished with leather chairs at styling stations as well as antique barber chairs where patrons sit while receiving a hot towel treatment and shoe shine.  The salons are equipped with a pool table, bar, and, until recently, a cigar room.  Patrons wear black smoking jackets while at John Allan's, and the employees wear black smocks, decorated with the salon's logo.  In addition to its salons, The John Allan Company markets its grooming products nationwide.  In 1996, it registered the mark "John Allan's & JA Circle Design" for "men's and women's

haircutting services, namely haircutting, manicures, facials, and massage services; retail counter in the field of hair and skin products" (the "J.A. Circle Design").[1]

The Craig Allen Company opened a men's salon, "Craig Allen's," in Wichita, Kansas after its owners visited John Allan's in New York. The owners of The Craig Allen Company, Craig Allen Tatro and Erik Leschuk,[2] settled on the name "Craig Allen's" after learning about John Allan's. The duo hired a designer to create a logo for Craig Allen's and provided the designer with materials created by The John Allan Company. Although the designer expressed concerns about copying another mark, Tatro and Leschuk suggested they were working with John Allan's, and thus had permission to use a similar design. The result was a logo, nearly identical to the trademarked J.A. Circle Design:

     

---

[1]The John Allan Company owns a total of four federally registered service marks, including the J.A. Circle Design and the mark "A Return to A Simpler Time." In addition to the J.A. Circle Design, The John Allan Company also used an unregistered trademark consisting of the circular design, without the name of the salon. Craig Allen's also used a similar mark. The district court concluded John Allan's had a protectable mark and the defendants infringed on the mark. In this opinion we refer to any mark including the circle design as the J.A. Circle Design.

[2]On appeal, the defendants, at times, spell Leschuk's first name "Erick." The district court and the Notice of Appeal, however, refer to Defendant Leschuk by the name "Erik" and we therefore use this spelling.

Further, Craig Allen's shared many of the features of John Allan's clubs, including outside windows with frosted glass embossed with the Craig Allen Circle Design logo ("C.A. Circle Design") and the phrase "A Return to A Simpler Time," which also appeared on the frosted windows of John Allan's clubs. Craig Allen's also provided black smoking jackets for its patrons to wear and was furnished with leather chairs, antique barber chairs for hot towel treatments, a bar, and a pool table.

In 2005, attorneys representing The John Allan Company contacted The Craig Allen Company concerning the alleged trademark infringement. Tatro and Leschuck ultimately removed the C.A. Circle Design from everything in Craig Allen's as well as the protected slogans from the windows. They also created a new logo:



The interior design and furnishings, however, were not changed. Nor did Craig Allen's change its name.

The John Allan Company sought injunctive relief for, *inter alia*, the defendant's use of the name "Craig Allen's," including the name "The Craig Allen Company, LLC" and the original C.A. Circle Design. The district court

concluded the C.A. Circle Design infringed on The John Allan Company's J.A. Circle Design. It declined, however, to enjoin Craig Allen's use of the C.A. Circle Design, finding it was unnecessary as the defendants had expended more than $20,000 to change to its new logo. Unlike the logo, the court concluded the use of the name "Craig Allen's" did not infringe on the unregistered mark "John Allan's."

On appeal, The John Allan Company argues the district court erred in (1) finding the Craig Allen's mark does not infringe on the John Allan's mark; and (2) failing to apply the "safe distance rule" to enjoin the use of the Craig Allen's mark based on the conclusion that the Craig Allen's Circle Design infringed John Allan's Circle Design.

## III.    Alleged Infringement of "John Allan's" Mark

The Lanham Act prohibits, in connection with any good or service, the unauthorized use or misleading representation of "any word, term, name, symbol, or device" in a way that "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1125(a)(1)(A).[3] "Confusion occurs when consumers make an incorrect mental association between the involved commercial products or

---

[3]Here, the mark "John Allan's" is unregistered, and thus The John Allan Company was required to show the mark is protectable. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008). The district court found "John Allan's" had acquired a secondary meaning and was therefore a protectable mark. The Craig Allen Company does not challenge this finding on appeal nor do we find any error in the district court's conclusion.

their producers." *Jordache Enter. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484 (10th Cir. 1987) (quotation omitted). Further, confusion results when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product. 15 U.S.C. § 1125(a)(1)(A); *see also Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 559 (10th Cir. 1984). Whether the use of a mark will result in a likelihood of confusion, and thus violate the Lanham Act, is a question of fact we review for clear error. *Heartsprings, Inc. v. Heartspring*, *Inc.*, 143 F.3d 550, 553 (10th Cir. 1998). In an appeal from a bench trial, we review the district court's legal conclusions de novo. *Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 (10th Cir. 2001).

To determine whether a likelihood of confusion exists, this court examines six, non-exhaustive, factors:

> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

*Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002). No one factor is dispositive. *Id.* Nevertheless, "the final determination of likelihood of confusion must be based on consideration of *all* relevant factors." *Heartsprings, Inc.*, 143 F.3d at 554. "The party alleging infringement has the burden of proving likelihood of confusion." *Utah Lighthouse Ministry*, 527 F.3d at 1055.

The John Allan Company argues the district court committed clear error in light of evidence that actual confusion existed and of Craig Allen's intent to copy its marks. Specifically, it contends the district court committed clear error (1) by failing to apply a rebuttable presumption based on evidence that the defendants intended to confuse customers and (2) refusing to find a likelihood of confusion based on evidence that consumers were confused. Although the district court need not apply a rebuttable presumption based on a finding of intent to copy, it did err by failing to consider evidence that consumers were confused by the two names of the salons. The district court's opinion also contains internal inconsistencies complicating several of its findings and requiring a remand.

## A.   The District Court's Internally Inconsistent Findings

In its assessment of the six factors, the district court found three factors weighed in the favor of The John Allan Company: the similarity of the marks, albeit only slightly weighing in the plaintiff's favor; the intent to copy; and the strength of the mark. It found two factors were neutral, weighing in favor of neither the plaintiff nor the defendants: the similarity of products and manner of marketing; and the degree of care exercised by consumers. Finally, it found The John Allan Company had not presented any evidence of actual confusion, and that weighed in favor of the defendants, The Craig Allen Company. It then concluded, however:

After reviewing all of the applicable factors, the court finds that a likelihood of confusion does not exist between the mark John Allan's and Craig Allen's. While there is some similarity and John Allan's does have a protectable mark, the other factors are neutral or weigh in favor of the defendants. The court is reluctant to find that the use of Tatro's middle name, and a common one at that, violates the plaintiff's mark without a stronger showing by plaintiff. *See Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 725 (9th Cir. 1985); *Brennan's, Inc.* [*v. Brennan's Restaurant, L.L.C.*], 360 F.3d [125], 131-32 [(2d Cir. 2004)].

This conclusion is inconsistent with the court's previous findings that three factors weighed in favor of The John Allan Company, while only one factor, the absence of actual confusion, weighed in favor of The Craig Allen Company.

Initially, the court found that the defendants "purposefully used the mark Craig Allen's to take advantage of plaintiff's goodwill" and therefore concluded that The Craig Allen Company intended to copy the mark "John Allan's." It stated, "[t]he fact that Craig Allen's was named after one of the partners, Craig Allen Tatro, seems too coincidental given defendants' purposeful copying of plaintiff's registered marks and other features of plaintiff's salons." The district court then proceeded to ignore this finding in resolving that Tatro's use of his own name, *without more*, was insufficient to establish a trademark violation. "Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion." *Utah Lighthouse Ministry*, 527 F.3d at 1055. The focus is on whether the defendant sought "to derive benefit from the reputation or goodwill

-8-

of the plaintiff." *Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1532 (10th Cir. 1994) (quotation omitted). In refusing to enjoin the use of the name Craig Allen's, the district court wholly ignored its prior finding that The Craig Allen company sought to benefit from the reputation and goodwill of John Allan's.[4]

Although this court will not set aside findings of fact unless clearly erroneous, internally inconsistent findings constitute clear error. *See Mendiola v. United States*, 994 F.2d 409, 410 (7th Cir. 1993) ("Findings are clearly erroneous if the trial court's interpretation of the facts is implausible, illogical, internally inconsistent, or contradicted by documentary or other extrinsic evidence."). Thus, further proceedings in the district court are necessary. *Mor-Cor Packaging Prods., Inc. v. Innovative Packaging Corp.*, 328 F.3d 331, 336 (7th Cir. 2003) (remanding on basis of internally inconsistent findings in the district court).

---

[4]Evidence of intent to copy does not create a rebuttable presumption of likelihood of confusion, thereby shifting the burden to the defendant, as The John Allan Company argues. Instead, the intent of the alleged infringer remains but one factor in our analysis. A finding that the infringer intended to copy may lead to an inference of confusion, even a strong inference, but the inference is a permissive one. *See Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002) ("Proof that a defendant chose a mark with the intent of copying the plaintiff's mark *may*, standing alone, justify an inference of likelihood of confusion." (emphasis added)); *Jordache Enter. Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987) ("A conscious choice of a mark similar to a mark already in the marketplace *usually* supports a finding of likelihood of confusion . . . ." (emphasis added)); *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 927 (10th Cir. 1986) (explaining "deliberate adoption of a similar mark *may* lead to an inference of intent to pass off goods as those of another which in turn supports a finding of likelihood of confusion" (emphasis added)).

The district court appears to have given substantial weight to the fact "Allen" is Craig Tatro's middle name. Courts are generally reluctant to enjoin an individual from using their own name. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 (9th Cir. 1992). This reluctance, however, "does not extend to cases where there has been an attempt to confuse the public." *Id.* (upholding injunction on use of mark "Gallo" on retail cheese packages where defendant intended to capitalize on reputation and selling power of Gallo Winery). Because the district court found The Craig Allen Company chose the name Craig Allen's "to take advantage of plaintiff's goodwill," its reluctance was misplaced. As the Second Circuit explained:

> [I]f an individual enters a particular line of trade for no apparent reason other than to use a conveniently confusing surname to his advantage, the injunction is likely to be unlimited.
>
> If, however, the second comer owns the company himself and evinces a genuine interest in establishing an enterprise in which his own skill or knowledge can be made known to the public, that argues in favor of allowing him to use his own name in some restricted fashion.

*Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735 (2d Cir. 1978) (citations and footnote omitted). Notably, the two cases upon which the district court relied were factually inapposite: both cases included findings that the junior user acted in good faith and had not attempted to appropriate the name to take

-10-

advantage of the senior user's reputation or goodwill.  *See Brennan's Inc.*, 360 F.3d at 130; *Sardi's Rest. Corp.*, 755 F.2d at 722.[5]

The Craig Allen Company fails to cite to any precedent where a junior user was permitted to use his given name in spite of an intent to benefit from the reputation and goodwill of the senior user.  On remand, the district court must properly weigh the use of Tatro's first and middle name, with its finding that The Craig Allen Company's adoption of the name "Allen" "seems too coincidental given defendants' purposeful copying of plaintiff's registered marks and other features of plaintiff's salons."  Part of this process will require consideration of Tatro's historical failure to use the name "Allen" in a personal or professional capacity.  *Cf. Brennan's Inc.*, 360 F.3d at 131-32.

## B.    Actual Confusion

The district court also erred in its findings related to actual confusion.  It found that The John Allan Company "failed to establish actual confusion as to the John Allan's Mark."  The appellant argues that the district court ignored evidence of actual confusion and this finding is therefore clear error.  "Actual confusion in the marketplace is often considered the best of evidence of likelihood of confusion."  *Universal Money Ctrs.*, 22 F.3d at 1534.  A plaintiff, however, "need not set forth evidence of actual confusion to prevail in a trademark infringement

---

[5]The Craig Allen Company admits Tatro "had no previous experience in the men's grooming industry" and does not suggest it is entitled to use the name "Allen" based on Tatro's reputation.

action." *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir. 1999). A court may disregard as *de minimis* isolated instances of actual confusion. *Id.*

The John Allan Company presented evidence from two witnesses who testified about the confusion between the salons' names. Although one witness, Steve Alvarez, appears to have been primarily confused by the logo, he also testified the name Allan's/Allen's was a source of his confusion:

> Q: What role in that mental process of formulating those associations did the fact that both businesses were using the second name Allan's/Allen's in their business play in you arriving at [the conclusion that Craig Allen's was associated with or a franchise of The John Allan Company]?
>
> A: After the logo, it was the second indicator that they were connected.
>
> Q: How did the fact that both of these businesses decided to use the name Allan's/Allen's as the second name of their business affect you when you first saw a written depiction of this new Wichita business?
>
> A: I was excited that something as neat as in New York was coming to Wichita; that it was a great opportunity.

A second witness, Chad Green, testified he was confused by the similarity of the name Allan's/Allen's. He testified:

> Q: Did you have any impression of John Allan's when you went in the first time to have your full service?
>
> A: I thought it was very similar to Craig Allen's as far as the look and feel inside.

> It looked classy; leather chairs, the same as Craig Allen's; a bar, the same as Craig Allen's; a pool table, the same as Crag Allen's; et cetera.

Q:    Did you speak to anybody at John Allan's about Craig Allen's?

A:    Yes.

Q:    Do you recall that conversation?

A:    It was a very short conversation.  It was with my stylist.

Q:    Do you recall what you said to her?

. . . .

A:    I said, "This place is a lot like Craig Allen's.  Is it owned by the same person?"  She said, "No."

. . . .

Q:    When you asked the stylist whether John Allan's and Craig Allen's were owned by the same people, what led you to believe that they were owned by the same people?

A:    The name was the first thing that came to mind.  I thought maybe it was a chain, maybe they were brothers, something like that.

Here, the district court limited its inquiry and did not consider the potential for confusion created by an appearance that the two salons had a common sponsorship or affiliation.  *Amoco Oil Co.*, 748 F.2d at 559; *see also First Sav. Bank F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 652 (10th Cir. 1996) (explaining "the ultimate question is whether" the use of a mark is "likely to cause consumers to believe there is an affiliation" between the parties).  The

-13-

district court misapplied federal law by solely focusing its analysis on whether the evidence established "that the companies were the same." Green's testimony clearly established he was confused as to affiliation, which is probative of actual confusion under our precedent. Alvarez's testimony also indicated the use of the name Allan's/Allen's confused him as to whether the two salons had a common sponsorship or affiliation. Although this evidence may be *de minimis*, we leave this determination for the district court to make in the first instance, on remand. Likelihood of confusion is a question of fact and it is therefore within the district court's province to determine how this evidence factors into its findings. *See Heartsprings, Inc.*, 143 F.3d at 553.

## IV. Injunctive Relief

The John Allan Company also challenges the district court's refusal to enjoin The Craig Allen Company's use of the mark "Craig Allen's" based on its findings that Craig Allen's Circle Design infringed on John Allan's Circle Design. We review a district court's decision to issue or deny a permanent injunction for an abuse of discretion. *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir. 1996). "A district court abuses its discretion when it issues an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (quotation omitted). Pursuant to the Lanham Act, the district court has the "power to grant injunctions, according to the principles of

equity and upon such terms as the court may deem reasonable, to prevent . . . a violation [of the Act]." 15 U.S.C. § 1116(a).

The John Allan Company invokes the "safe distance rule," which was created to protect against defendants, found to have infringed upon a trademark from

> preserv[ing] . . . good will acquired through fraud. The due protection of [trademark] and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves.

*Taubman Co. v. Webfeats*, 319 F.3d 770, 779 (6th Cir. 2003) (quotation omitted). Like the original infringement itself, the safe distance rule is "founded on a likelihood of confusion standard." *Id.* Where confusion lingers, the infringer must "not only [] secure a new non-infringing name (or other infringing characteristic) for his product, but [choose] one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Id.*

In this case, the district court concluded The Craig Allen Company infringed on three of John Allan's protected marks: the J.A. Circle Design (both the logo by itself and the logo with John Allan's name) and the mark "A Return to A Simpler Time." The district court declined to enjoin The Craig Allen Company from using these marks, however, because it found "[d]efendants ceased using

-15-

these marks approximately two years ago and expended more than $20,000 to effect the changes." It therefore concluded it was "highly unlikely . . . defendants will return to using the plaintiffs marks." The John Allan Company does not appeal this determination. Nor does it argue The Craig Allen Company is continuing to use these offending marks with only minor modifications. Instead, it suggests the district court had a legal obligation to apply the safe distance rule to enjoin the defendant's use of the name "Craig Allen's" even if it found there was no likelihood of confusion with respect to the name.

The John Allan Company misperceives the safe distance rule. Even if the rule is applicable, it does not create a legal duty under which The Craig Allen Company is obligated to act. *See Badger Meter, Inc v. Grinnell Corp.*, 13 F.3d 1145, 1155-56 (7th Cir. 1994) (explaining the safe distance rule "addresses the evidentiary issues of how carefully a district court must scrutinize new trade dress of a prior infringer, not . . . the issue of the infringer's legal duty to the first user"). Although a district court may require a prior infringer to choose a mark that avoids all possibilities of confusion, it is "not required as a matter of law to do so." *Id.* at 1156. The district court was well within its discretion to deny The Craig Allen Company injunctive relief on these grounds. On remand, however, should the district court determine the mark "Craig Allen's" creates a likelihood of confusion with "John Allan's," the court should revisit the issue of whether injunctive relief is necessary.

## V.     Conclusion

For the foregoing reasons, this court **reverses** the judgment of the district court and **remands** for further proceedings consistent with this opinion.