**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 17, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LA RESOLANA ARCHITECTS, PA,
a New Mexico corporation,

      Plaintiff-Appellant,

v.

RENO, INC., d/b/a Clay Realtors
Angel Fire, a New Mexico
Corporation; SOUTHWEST
INVESTMENT TRUST, LP, a New
Mexico Limited Partnership; LANCE
K. CLAY, an individual; and GARY
PLANTE, an individual,

      Defendants-Appellees.

No. 06-2232

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-05-1017-PK)**

---

Kevin Lynn Wildenstein of Southwest Intellectual Property Services, LLC,
Albuquerque, New Mexico (H. Brook Laskey and Gary Gordon of Miller Stratvert
PA, Albuquerque, New Mexico, with him on the brief) for Plaintiff-Appellant.

Edward Ricco of Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New
Mexico (DeWitt M. Morgan, Kurt B. Gilbert, and Todd E. Rinner of Rodey,
Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico; Randy S.
Bartell of Montgomery & Andrews, P.A., Santa Fe, New Mexico; and Michael
Plante, Albuquerque, New Mexico, with him on the brief) for Defendants-
Appellees.

Before **BRISCOE**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Plaintiff-Appellant La Resolana Architects, PA, ("La Resolana") brought an action against Reno, Inc., its president Lance Clay (collectively "Reno, Inc."), Southwest Investment Trust, and its president Gary Plante (collectively "SWIT") for copyright infringement, violation of the Lanham Act, and violation of the New Mexico Unfair Trade Practices Act ("UTPA"). After a bench trial, the district court entered judgment in favor of the defendants on all counts. We conclude that the district court did not clearly err in determining that La Resolana failed to establish copying as a matter of fact. Therefore, exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **AFFIRM**.

## I. BACKGROUND

In late 1996, Reno, Inc. and SWIT were beginning the process of developing a residential housing complex in Angel Fire, New Mexico. In order to reduce costs, they wanted to build the homes out of prefabricated, modular segments which would only need to be combined and placed onto a foundation on site. They contacted Preferred Building Systems ("Preferred"), a company that specializes in the building of modular homes, about providing the prebuilt

segments.  Preferred, in turn, enlisted the services of Earl Hilchey, an architect and the president of La Resolana, with whom Preferred often worked.

In December 1996, Lance Clay, president of Reno, Inc., and Gary Plante, president of SWIT, met with Larry Jones, a representative of Preferred, and Mr. Hilchey.  The parties have markedly different recollections as to what happened at that meeting.  Mr. Clay claims that, prior to the meeting, he already had a very detailed idea of how the homes should be built.  Each building should "consist[] of two dwelling units, each with living space and a garage, built in the shape of a U.  The garages [would occupy] the center of the structure and [would be] joined at the lot line, with the living spaces on either end forming the sides of the U."  Aplee. Br. at 4.  The exterior was to be a combination of stucco and redwood siding.  Mr. Clay claimed to have designed a basic floor plan and reportedly even knew such details as the location of the dormers, the size and shape of the windows, and the pitch of the roof.  At the trial, Mr. Clay testified that he told all of this to Mr. Hilchey at the December meeting and even drew a sketch of what he wanted.

According to Mr. Hilchey, however, neither Mr. Clay nor Mr. Plante gave him any specific instructions.  He testified that "they were looking for a home, no larger than 1200 square feet, typical two-bedroom, two-bath, and that was pretty much it."  Aplt. App. at 79.

After this initial meeting, there was an exchange of communications regarding a site development plan and other topics involving the Angel Fire development. Mr. Hilchey sent via facsimile at least five sets of architectural plans, each modified from the last and based primarily on communication with Mr. Plante. Mr. Hilchey admitted that he did not fax the plans directly to Mr. Plante; rather, he faxed three sets of plans to Mr. Plante's prior legal counsel and two sets of plans to a lawyer who was a potential investor. Mr. Plante testified that he never received any of the plans. After the spring of 1997, Mr. Hilchey heard nothing further from either Mr. Plante or Mr. Clay.

Mr. Hilchey also faxed a copy of the final plans to Mr. Jones of Preferred, who prepared a price quotation for Mr. Plante. Mr. Jones testified that it was his normal practice to send the architectural drawings along with the quotation. He could not remember, however, whether he did so in this case. Mr. Plante acknowledges that he received the quotation but denies receiving any drawings with it.

Mr. Clay submitted a proposal to the Village of Angel Fire for the use of modular homes in his development. Receiving a lukewarm reception, he decided to erect stick-built homes instead. To that end, Mr. Clay hired another architect, Charles Hasford, to draw site plans and architectural plans for the project. As with Mr. Hilchey, Mr. Clay claims to have provided Mr. Hasford a detailed drawing showing what he wanted his homes to look like.

-4-

In 2003, Mr. Hilchey saw what he thought looked like homes built from his earlier-developed architectural plans in Mr. Clay's development in Angel Fire. Mr. Hilchey's company, La Resolana, brought suit against Reno, Inc. and Lance Clay, as well as Southwest Investment Trust and Gary Plante, claiming copyright infringement, violation of the Lanham Act, 15 U.S.C. § 1125(a), and violation of the New Mexico UTPA, N.M. Stat. §§ 57-12-1 to -26. La Resolana seeks injunctive relief as well as damages.

After holding a bench trial, the district court recorded findings of fact and conclusions of law and entered judgment for Reno, Inc. and SWIT on all claims. La Resolana timely filed a notice of appeal.

## II. DISCUSSION

On appeal, La Resolana argues that Reno, Inc. and SWIT infringed La Resolana's copyright; that the district court erred in excluding lay opinion testimony regarding the substantial similarity between La Resolana's copyrighted work and Reno, Inc.'s plans; and that the district court erred in entering judgment for Reno, Inc. and SWIT on La Resolana's Lanham Act and UTPA claims. We agree with the district court that La Resolana has not established copying as a factual matter. As a result, and for the reasons noted below, La Resolana cannot prevail on this appeal.

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Servs.,*

-5-

*Inc. v. City of Olathe, Kan.*, 248 F.3d 1267, 1274 (10th Cir. 2001). "Findings of fact are clearly erroneous when they are unsupported in the record, or if after our review of the record we have the definite and firm conviction that a mistake has been made." *TransWestern Publ'g Co. v. Multimedia Mktg. Assocs., Inc.*, 133 F.3d 773, 775 (10th Cir. 1998) (internal quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985). This admonition applies equally regardless of whether the district court's factual findings are based on credibility determinations or on documentary evidence.[1] *Id.* at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the

---

[1]      La Resolana argues that in copyright cases, the district court's factual findings as to whether the allegedly infringing work is substantially similar to the copyrighted material should be reviewed de novo. This is the approach adopted by the Second Circuit. *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir. 1991) ("In considering substantial similarity between two items, we review the district court's findings *de novo*—not on the clearly erroneous standard—because what is required is only a visual comparison of the works, rather than credibility, which we are in as good a position to decide as was the district court."). Most of the other circuits apply the clear error standard. *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 964-66 (8th Cir. 2005) (collecting cases). Because we affirm the district court's judgment based on its finding that the defendants did not have access to La Resolana's copyrighted plans, we do not reach the question of whether the two sets of architectural drawings are substantially similar.

district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." (citation omitted)).

## A. Copyright Infringement

There are two elements to a copyright infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The plaintiff bears the burden of proof on both elements. *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005). Because Reno, Inc. and SWIT do not challenge the validity of La Resolana's copyright,[2] we address only the second element.

La Resolana must prove that Reno, Inc. "unlawfully appropriated protected portions of the copyrighted work." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993). This requires proving both: (1) that Reno, Inc., as a factual matter, copied portions of La Resolana's work; and (2) that those elements of the work that were copied were "protected expression and of such importance to the copied work that the appropriation is actionable." *Id.*; *see*

---

[2] The district court found that the application for registration and the assignment of rights from Mr. Hilchey to La Resolana contained inaccuracies and that the registration was obtained more than five years after first publication of the copyrighted work. The district court, however, did not grant the relief requested by Reno, Inc., i.e., declaring the registration invalid as a result of fraud on the U.S. Copyright Office. Reno, Inc. has not challenged this decision.

*Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002). The district court determined that La Resolana had failed to prove, as a factual matter, that Reno, Inc. copied its plans. Since we uphold this finding, we need not render any conclusions concerning the second part of the analysis.

Direct proof of copying is often hard to come by. *See Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996); *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999). Therefore, a plaintiff can indirectly prove copying (in a factual sense) "by establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material." *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284.

## 1. Access

A plaintiff may meet the initial burden of establishing access "by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work." *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1490 (10th Cir. 1993) (internal quotation marks omitted); *see Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 n.5 (7th Cir. 1994). Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, "evidence that only creates a bare possibility that the defendant had access is not sufficient." *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108, 117 (1st Cir. 2007) (alterations and internal quotation marks omitted);

*see* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.02[A], at 13-21 (2008) ("Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing plaintiff's work—not a bare possibility.").

After hearing conflicting testimony about what was said at the December 1996 meeting and who faxed what to whom, the district court concluded that neither Reno, Inc., SWIT, nor Mr. Hasford ever saw La Resolana's copyrighted plans. The court based its conclusion, in part, on its determination that both Mr. Clay and Mr. Hasford were very credible witnesses. Additionally, Mr. Hilchey admitted that he never faxed the plans directly to Mr. Clay, Mr. Plante, or Mr. Hasford. Instead, he faxed them to two law firms. But Mr. Clay had no contact with either law firm, and there was no evidence that Mr. Plante ever received any of the faxes. While Mr. Jones used the copyrighted plans to prepare a cost quotation for Mr. Plante, the district court found that Mr. Jones did not include the plans with the quotation. Finally, the court found that there were discussions between Mr. Clay, Mr. Plante, and Mr. Hilchey regarding a site plan, the number of units to be built, and square footage estimates. However, none of these topics was the subject of Mr. Hilchey's copyright.

Even if La Resolana's evidence demonstrated a "bare possibility" that Reno, Inc. had access to its copyrighted plans, a "bare possibility" is not sufficient to establish access. The evidence in the record supports the district

court's factual findings, which, in turn, support its legal conclusion that Reno, Inc. did not have the requisite access.

## 2. *Striking Similarity*

La Resolana also argues that Reno, Inc.'s plan is so strikingly similar to its copyrighted plan that La Resolana bears a significantly lower burden of establishing access. We have stated that "[a] high degree of similarity may permit access to be inferred." *Gates Rubber Co.*, 9 F.3d at 833 n.9. Thus, if a plaintiff is unable to demonstrate access, he may establish (factual) copying by demonstrating that the copyrighted work and the alleged infringing work are "strikingly similar." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007); *cf. Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 371-72 & n.10 (5th Cir. 2004) (recognizing that "other [federal] courts" have endorsed the legal principle under which a plaintiff may establish factual copying without any proof of access when the similarity between the works is sufficiently striking such that copying can be inferred solely on that basis).

Striking similarity exists when "the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'" *Corwin*, 475 F.3d at 1253 (quoting *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984)). Further, "the similarities should appear in a sufficiently unique or complex context as to make it unlikely that both pieces were copied from a prior common source." *Selle*, 741

-10-

F.2d at 904. However, "[o]ne work does not violate the copyright in another simply because there is a similarity between the two if the similarity results from the fact that both works deal with the same subject or have the same common source." *Dorsey v. Old Sur. Life Ins. Co.*, 98 F.2d 872, 873 (10th Cir. 1938).

Although the district court did not detail the similarities between the two plans, under the circumstances of this case and particularly those related to the conduct of Mr. Clay, we conclude that the district court did not err in finding that Mr. Hasford's plans were not strikingly similar to Mr. Hilchey's. The court found that there were "major differences in the kitchen area, living area, master bath and roof slope, placement of doors, placement of plumbing, [and] placement of door openings, all of which affect traffic-flow and articulation of space." Aplee. Supp. App. at 143-44. And the court reasoned that "[t]hese differences so outweigh any similarities that the similarities are inconsequential within the total context of the work." *Id.* at 144. Importantly, the district court also credited Mr. Clay's testimony that he provided both architects with a detailed list of his requirements, including a sketch of the floor plan. The court concluded that the similarities between the two plans were adequately explained by the fact that both derived from the same common source, namely Mr. Clay.

La Resolana's expert admitted that Mr. Hasford's drawings were not exact copies of La Resolana's copyrighted plans.[3] On appeal, La Resolana points to no expert testimony that the existing similarities could have resulted only from copying. *See Selle*, 741 F.2d at 905 ("[T]he burden of proving 'striking similarity,' which, by definition, includes taking steps to minimize the possibility of common source, is on the plaintiff."). While La Resolana's expert expressed skepticism that a client would come to an architect with such detailed ideas already formed, he conceded that if Mr. Clay had done so, Mr. Clay could be considered a common source.

Rather than identifying an evidentiary basis for its striking similarity claim, La Resolana contends that the district court erred in finding that Mr. Clay gave Mr. Hilchey a sketch. However, the record provides a sufficient basis for the district court to conclude that such a sketch existed. The court did not commit clear error simply because it chose to credit Mr. Clay's testimony over Mr. Hilchey's. Mr. Clay testified to exactly how, why, and when he developed his ideas for the design of the homes. The U-shaped design was an attempt to

---

[3] The expert did attempt to qualify his answer by asserting: "[T]he Hasford drawings are derivative of the earlier Hilchey drawings. . . . [T]he one came from the other, would be my expert testimony." Aplee. Supp. App. at 178-79. Yet, the district court expressly rejected such similarity testimony on credibility grounds. It found that "[g]iven the obvious differences [between the two plans]," "the testimony of La Resolana's expert [is] incredible and not worthy of belief." *Id.* at 144. Operating under a deferential clear error standard of review, we discern no basis for disturbing this finding.

-12-

maximize the number of houses on the property. The locations of the jut-outs and dormers were a compromise that allowed the homes to be built from 12-foot-wide prefabricated segments without looking "like a mobile home park." Aplee. Supp. App. at 197. The combination of stucco and redwood siding was a style that Mr. Clay had used on a previous project. The district court was impressed with the depth of Mr. Clay's knowledge and considered him a "very credible witness." *Id.* at 141. Under these circumstances, the district court's finding that Mr. Clay was a prior common source is wholly plausible, thereby negating La Resolana's argument that this case presents a rare circumstance in which it need not show that Reno, Inc. had access to its copyrighted plans.

### 3. Other Arguments

We do not reach the issue of whether Reno, Inc., as a legal matter, infringed La Resolana's copyright. Once copying has been established, "liability for copyright infringement will attach only where protected elements of a copyrighted work are copied." *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284. The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *Id.* Substantial similarity is measured by whether an "ordinary observer," who is not specifically looking for disparities, would tend to overlook any differences between the works. *Id.* at 1288. However, because La Resolana

did not establish copying as a factual matter, whether the two plans are substantially similar is immaterial.

La Resolana contends, however, that the district court erred in excluding the testimony of Jeanette Jackson. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Serrata*, 425 F.3d 886, 901 (10th Cir. 2005). Ms. Jackson was a lay witness with no personal knowledge of the facts of this case. La Resolana sought to introduce her testimony, as an "ordinary observer," that Reno, Inc.'s plans were substantially similar to La Resolana's copyrighted plans. But the "ordinary observer," like the "reasonable person" in tort law, is a legal fiction; it is the measure by which the trier of fact judges the similarity of two works. *See Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1288 ("'*[T]he trier of fact* can then assess pursuant to the ordinary observer test whether there is substantial similarity between the protected expression and the accused work.'" (emphasis added) (quoting *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 609 (1st Cir. 1988))). Since it was the responsibility of the district court to decide, for itself, whether the plans were substantially similar, it did not abuse its discretion by excluding Ms. Jackson's testimony as not helpful. *See* Fed. R. Evid. 701. Moreover, the district court's finding that Reno, Inc. did not copy La Resolana's plans made it unnecessary for the court to consider whether the plans were substantially similar. Thus, even if

the court had erred in excluding Ms. Jackson's testimony, such error would be harmless.

La Resolana also claims that SWIT indirectly infringed its copyright, either contributorily or vicariously. However, both contributory and vicarious infringements require someone to have directly infringed the copyright. *See Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004) ("Liability for contributory infringement is based on the defendant's relationship to the direct infringement. There can be no contributory infringement without a direct infringement." (citation omitted)); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from *another's* infringing activity and has the right and ability to supervise the infringing activity." (internal quotation marks omitted)). *See generally Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930-31 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." (citations omitted)). Because La Resolana failed to establish that Reno, Inc. infringed its copyright, La Resolana's claim of indirect infringement against SWIT necessarily fails.

-15-

## B. Lanham Act and UTPA Claims

La Resolana claims that Reno, Inc. falsely designated itself as the origin or source of the architectural plans at issue, constituting a claim for "product infringement" pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and an alleged violation of New Mexico's UTPA. *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 n.3 (10th Cir. 1999). To establish a Lanham Act claim, a plaintiff must prove:

> (1) that the defendant made material false or misleading representations of fact in connection with the . . . promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1140 (10th Cir. 2006) (internal quotation marks omitted); *see Cottrell, Ltd.*, 191 F.3d at 1252.

Absent a conclusion that Reno, Inc. copied its plans in the copyright context, La Resolana has no basis for either a Lanham Act or a UTPA claim.[4] The district court's factual findings evidencing that Reno, Inc. did not copy La Resolana's copyrighted plans—i.e., no access, and no striking similarity—as well

---

[4] La Resolana comes close to tacitly acknowledging this. *Cf.* Aplt. Br. at 36 ("*If* the Court finds that the Appellees infringed La Resolana's copyrighted architectural drawings, *it follows* that the Appellees' use and promotion of a similar architectural design in interstate commerce is likely to cause confusion among consumers . . . believing that they (the Appellees) own or have permission to use the architectural works, when they do not." (emphasis added)).

as its factual findings that: (1) neither Mr. Clay nor Mr. Plante made any false or misleading oral or written statements or representations, (2) neither Mr. Clay nor Mr. Plante passed off or repackaged any of Mr. Hilchey's or La Resolana's drawings or works to sell as his own; and (3) Reno, Inc.'s drawings did not originate with La Resolana, all have evidentiary support in the record. If Reno, Inc.'s plan is a work independent of La Resolana's, it is impossible to establish that Reno, Inc. made false or misleading statements (as alleged by La Resolana) about the origin of its plan, a required element of La Resolana's Lanham Act and UTPA claims.

Because the district court's factual findings are not clearly erroneous, its judgment in favor of Reno, Inc. and SWIT on La Resolana's Lanham Act and UTPA claims must stand.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.