**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 28, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HEARTLAND ANIMAL CLINIC,
P.A.,

       Plaintiff/Counter-
       Defendant/Appellee,

    v.

HEARTLAND SPCA ANIMAL
MEDICAL CENTER, LLC;
HEARTLAND SOCIETY FOR THE
PREVENTION OF CRUELTY TO
ANIMALS, INC., doing business as
Heartland SPCA; HEARTLAND
SPCA PET ADOPTION AND LOST
PET CENTER, LLC,

       Defendants/Counter-
       Claimants/Appellants.

No. 12-3084

D. Kansas

(D.C. No. 2:11-CV-02629-JTM-KGG)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Introduction

Defendant-appellant Heartland SPCA, LLC (the "SPCA") appeals the district court's grant of a preliminary injunction in favor of plaintiff-appellee Heartland Animal Clinic (the "Animal Clinic") enjoining the SPCA from using the "Heartland" mark. *See* 15 U.S.C. § 1116. After briefing and a hearing, the district court concluded the term "Heartland" was protectable as a suggestive mark, a likelihood of confusion existed due to the SPCA's use of the mark, and the other preliminary injunction factors were satisfied. It therefore granted the Animal Clinic's motion for a preliminary injunction. This appeal followed. Exercising jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), this court affirms.

## II. Background

Heartland Animal Clinic is a small veterinary practice in Overland Park, Kansas. Originally named the Santa Fe Animal Clinic, it changed its name in 1995 when another veterinary clinic in the area started using the Santa Fe name. Heartland SPCA, LLC, is a nonprofit organization formed on June 15, 2011. Its purpose is to prevent cruelty to animals and provide a full range of services to pets and pet owners in Kansas City. The SPCA owns two subsidiaries: Heartland SPCA Animal Medical Center, LLC, and Heartland SPCA Pet Adoption and Lost Pet Center, LLC. All three entities are marketed and advertised to the public under the name "Heartland SPCA." The SPCA's headquarters are located approximately four miles from Heartland Animal Clinic. After receiving

numerous calls and visits from people trying to reach the SPCA, Dr. Jill Sandler, the owner of the Animal Clinic, contacted the SPCA's executive director, Courtney Thomas, and asked her to please stop using the "Heartland" name. The SPCA declined.

The Animal Clinic brought suit on November 14, 2011, alleging service mark infringement under the Lanham Act. *See* 15 U.S.C. § 1125(a). It moved for a preliminary injunction enjoining the SPCA from using the "Heartland" mark on February 14, 2012. A hearing was held on March 16, 2012. The district court heard testimony from Lori Ochoa, the office manager at the Animal Clinic; Courtney Thomas, the CEO of the SPCA; James Budde, a consumer researcher who did market research on behalf of the Animal Clinic; and Dr. Sandler. Exhibits admitted at the hearing included a consumer survey which measured respondents' opinions as to the meaning of the term "Heartland" and a call log compiled by the staff at the Animal Clinic which documented what the Clinic believed to be instances of consumer confusion. The district court thereafter granted the Animal Clinic's motion and enjoined the SPCA from using the name "Heartland" to market veterinary services in the Kansas City Metropolitan Area. The court also ordered the Animal Clinic to post a surety bond of $225,000, an amount equal to one year's marketing budget for the SPCA.

## III. Discussion

### A. Standard of Review

This court reviews the district court's decision to grant a preliminary injunction for abuse of discretion. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). In doing so, the court examines the district court's factual findings for clear error and reviews its legal determinations de novo. *Id.* Under the abuse of discretion standard, the court must

> give due deference to the district court's evaluation of the salience and credibility of testimony, affidavits, and other evidence. We will not challenge that evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record.

*Id.* (quotation omitted). This court has characterized an abuse of discretion as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (quotation omitted).

A preliminary injunction is an extraordinary remedy which should not be issued unless the movant demonstrates a "clear and unequivocal" right to relief. *Heideman*, 348 F.3d at 1188 (quotation omitted). To obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *General Motors Corp. v. Urban Gorilla, LLC*, 500

-4-

F.3d 1222, 1226 (10th Cir. 2007).  Additionally, in this case, the district court

concluded the Animal Clinic was subject to a heightened burden because the

relief sought was essentially identical to what it would obtain after a full trial.

*See GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984).  The district

court therefore required the Animal Clinic to make a "strong showing" with

regard to both the likelihood of success on the merits and the balance of harms.

Nonetheless, "while the standard to be applied by the district court in deciding

whether a plaintiff is entitled to a preliminary injunction is stringent, the standard

of appellate review is simply whether the issuance of the injunction . . .

constituted an abuse of discretion."  *Doran v. Salem Inn, Inc.*, 422 U.S. 922*,*

931–32 (1975).[1]

---

[1]While nominally acknowledging the abuse of discretion standard applies, the SPCA argues this court may conduct a more searching review here because "the evidence is primarily documentary and closely intertwined with legal considerations."  In support of this assertion, the SPCA cites two cases from other circuits decided in 1977.  *See Gay Lib v. Univ. of Mo.*, 558 F.2d 848, 853 n.10 (8th Cir. 1977); *FTC v. Texaco, Inc.*, 555 F.2d 862, 876 n.29 (D.C. Cir. 1977).  These authorities are inapposite.  The issue of whether a mark is descriptive or suggestive, as well as the issue of whether a likelihood of confusion exists are both factual questions.  *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (categorization of a mark); *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1138 (10th Cir. 2008) (likelihood of confusion).  Moreover, binding precedent of the Supreme Court and this court rejects the notion that the standard of review for a district court's factual determinations is lessened when those determinations are based on documentary evidence.  *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

In determining whether the Animal Clinic demonstrated a strong likelihood of success on the merits of its Lanham Act claim, the district court considered whether it owned a valid, protectable mark and whether a likelihood of confusion existed between its mark and that of the SPCA. The court went on to consider the additional preliminary injunction factors: irreparable harm, the balance of equities, and the public interest. The SPCA challenges the district court's conclusions as to each issue.

B.      Protectability of Heartland Animal Clinic Mark

Before the district court, the parties disagreed whether the mark "Heartland Animal Clinic" was descriptive or suggestive. "A descriptive mark identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 976 (10th Cir. 2002). It is protectable "only when it has acquired a secondary meaning by becoming distinctive in the applicant's goods in commerce." *Id.* (quotation omitted). Marks which merely describe the geographic origin of a good or service are descriptive. 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 14:1 (4th ed. 2012). No attempt was made before the district court to argue the Heartland Animal Clinic mark has acquired secondary meaning. A suggestive mark "suggests rather than describes a characteristic of the product and requires the consumer to use imagination and perception to determine the product's nature." *First Sav. Bank v.*

-6-

*First Bank Sys., Inc.*, 101 F.3d 645, 655 (10th Cir. 1996). A suggestive mark is "deemed inherently distinctive and [is] entitled to protection." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The categorization of a mark is a factual question. Notably, however, the fact-finder's own perception of the mark is not the object of the inquiry. Rather, the fact-finder's function is to determine, based on the evidence before it, what the perception of the purchasing public is." *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (quotations and citations omitted).

The district court found that, although the term "Heartland" has geographical connotations, it is not primarily geographically descriptive. The court noted there are businesses named "Heartland" throughout the United States, and that in popular usage the term connotes a set of values which transcend any particular geographical area. The court referenced the PBS television show *America's Heartland*, filmed in all 50 states; the Heartland Rock genre founded by New Jersey native Bruce Springsteen; and the hit song *Heartland* by country music artist George Strait. The court also relied on an internet panel survey conducted by an expert hired by the Animal Clinic. The survey consisted of five questions and was answered by 600 persons. Question 2 asked respondents to react to the statement "When People refer to 'The Heartland,' they are referring to more than a geographic region." The question provided answer choices: Strongly Agree, Somewhat Agree, Neither Agree nor Disagree, Somewhat Disagree, and

Strongly Disagree. The survey indicated 77% of respondents either somewhat or strongly agreed. Question 4 was open-ended, and asked respondents to enter answers to the question "What does the term 'Heartland' mean to you?". Responses were coded as either emotional, geographic, both, unknown, or non-responsive, with 64% of responses coded as emotional. In sum, the court concluded "[t]he term is not used primarily as a geographic description, but is valued for its association with positive characteristics such as hard work, honestly, and — in particular — customary, homespun, 'traditional values.'"

The SPCA challenges these findings on two grounds. First, it argues the "Heartland Animal Clinic" mark is not protectable because it is possible to construe the term "heartland" as referring to a particular geographic location. Thus, the SPCA argues, it is irrelevant whether the term "heartland" has non-geographic connotations; so long as it can be construed to refer to a location, it is descriptive. The SPCA cites no binding authority from this circuit in support of this proposition, and authority from other circuits favors a less restrictive reading of the doctrine. *See, e.g.*, *Forschner Group, Inc. v. Arrow Trading Co.*, 30 F.3d 348, 355 (2d Cir. 1994) ("That a phrase or term evokes geographic associations does not, standing alone, support a finding of geographic descriptiveness." (emphasis omitted)); *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 594 (6th Cir. 1989) ("The Lanham Act does not protect *primarily* geographically descriptive marks. . . . To further clarify whether the

mark is *primarily* geographically descriptive, it is valuable to examine the possibility that the geographic term is 'minor, obscure, remote or *unconnected with the goods*.'" (last emphasis in original)).

Second, the SPCA challenges the district court's factual findings by pointing to numerous pieces of testimony indicating the term "heartland" has a geographical meaning and raising several challenges to the reliability of the survey evidence presented to the district court.  On appeal, the burden rests with the SPCA to show the district court clearly erred in finding the term "heartland" was not primarily geographically descriptive and was therefore a protectable suggestive mark.  *Donchez*, 392 F.3d at 1216; *Heideman*, 348 F.3d at 1188.  In an attempt to overcome this demanding standard, the SPCA argues the expert who commissioned the survey was unqualified, the procedures for selecting interviewees were unsound, the universe of respondents was overbroad, the questions were leading, and the results were not accurately reported.  The SPCA further argues the claimed flaws in the Animal Clinic's survey evidence make it so unreliable that it should not have been admitted at the preliminary injunction hearing, or, in the alternative, that it should not have been given as much weight as the district court gave it.  However, "[t]he Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman*, 348 F.3d at 1188.[2]  Thus,

_____

[2]The SPCA cites *Bryant v. Farmers Insurance Exchange*, 432 F.3d 1114, 1122 (10th Cir. 2005), for the proposition that this court reviews the admissibility
(continued...)

-9-

challenges to the admissibility of the consumer survey are inappropriate at this stage in the proceedings. Similarly inappropriate is the SPCA's argument that the district court gave undue weight to the survey evidence. This court cannot deem a district court's findings of fact clearly erroneous even if convinced that, had it been sitting as trier of fact, it would have weighed the evidence differently. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009). Thus, the SPCA has failed to demonstrate the district court's finding that "heartland" was a protectable suggestive mark was clearly erroneous.

C.      Likelihood of Confusion

"Whether the use of a mark will result in a likelihood of confusion . . . is a question of fact we review for clear error." *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1138 (10th Cir. 2008). Moreover,

> [t]o determine whether a likelihood of confusion exists, this court examines six, non-exhaustive, factors:
>
> (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

---

[2](...continued)
of evidence for abuse of discretion. In *Bryant*, the court reviewed a grant of summary judgment, at which stage "the content or the substance of [proffered] evidence must be admissible." *Id. Bryant* thus does not inform this court's review of a district court's grant of a preliminary injunction.

*Id.* The district court concluded the Animal Clinic presented strong evidence of actual confusion, and that the other five factors were either neutral or only slightly favored the SPCA. It therefore concluded the Animal Clinic had shown a sufficient likelihood of confusion to warrant injunctive relief.

           1.      Actual Confusion

"Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1534 (10th Cir. 1994). The SPCA strenuously challenges the district court's finding that the Animal Clinic presented compelling evidence of actual confusion. In particular, the SPCA argues the district court placed undue weight on the call log compiled by employees of the Animal Clinic. The SPCA argues the entries in the call log were often vague, prepared by interested parties, and not clearly representative of actual confusion as opposed to carelessness or mistake. Other entries, the SPCA argues, are simple inquiries attempting to determine affiliation, were not made by potential customers, or did not involve confusion at all.

The district court rejected the SPCA's attempts to minimize the Animal Clinic's evidence. The court distinguished the cases cited by the SPCA in which the only evidence of actual confusion was a few isolated instances of misplaced phone calls or customer inquiries. After examining the call log and hearing testimony as to the circumstances of its creation, the district court concluded such

-11-

inquiries constituted "relatively few" of the calls received by the Animal Clinic, and that dozens of others reflected genuine confusion, *i.e.*, consumers contacting the Animal Clinic seeking services from the SPCA. *Cf. Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487 (10th Cir. 1987) (concluding the district court correctly gave little weight to the testimony of a single employee of the plaintiff who claimed he received calls asking whether two companies were affiliated); *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 n.3 (10th Cir. 1998) (rejecting the plaintiff's reliance on a single incident of parallel marketing efforts to show overlap in the relevant markets). Further, the district court attached significance to the timing of the confused inquiries, which began almost immediately after the SPCA's adoption of the Heartland mark. The court also relied on a leading treatise for the proposition that "given the proper factual setting, even just a few instances of actual confusion can provide very persuasive evidence of how and why confusion can occur." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 23:14 (4th ed. 2012).

The SPCA's arguments on appeal are inadequate to disturb these findings. To disturb the factual findings supporting the district court's conclusion that a likelihood of confusion exists, the SPCA bears the burden of demonstrating those findings are clearly erroneous. *John Allan Co.*, 540 F.3d at 1138. The SPCA has failed to demonstrate the district court's factual findings are without any record support nor is this court left with a definite and firm conviction that a mistake has

been made. *La Resolana*, 555 F.3d at 1177. Instead, the SPCA's arguments amount to simple challenges to the relative weight the district court chose to accord to the evidence before it. Such challenges do not amount to a demonstration of clear error. *Id.*

 2. Other Likelihood of Confusion Factors

The SPCA also argues the district court erred by not resolving more strongly in its favor the five factors other than actual confusion. For example, regarding the similarities between the marks, the district court concluded the two marks were dissimilar in many ways (such as typeface, color, and the use of the acronym "SPCA") but similar in a few key ways (both logos prominently feature the word "Heartland" and a silhouetted dog and cat; moreover, the visual distinctions between the marks were lost when the SPCA's services were marketed via radio). The SPCA argues these conclusions place too much weight on the similarities and insufficient weight on the dissimilarities between the two marks. Regarding the manner of marketing, the district court acknowledged the SPCA utilizes a wider variety of marketing methods than the Animal Clinic and offers a number of services the Animal Clinic does not. However, the court also acknowledged a non-negligible portion of the SPCA's customers are people who might otherwise seek services from the Animal Clinic. On appeal, the SPCA reiterates the differences between its marketing methods and services and those of the Animal Clinic, and therefore asserts this factor should have weighed in its

-13-

favor. Regarding the relative care used by consumers, the district court concluded the SPCA markets its services to a relatively unsophisticated segment of the market, and therefore did not consider the factor to favor the SPCA. Before this court, the SPCA points to testimony it believes supports a contrary conclusion. Regarding the strength of the marks, the district court concluded the factor was neutral because, while the term "Heartland" was widely used by other businesses in the Kansas City area, it was not used by any veterinary care organizations other than the Animal Clinic and the SPCA. The SPCA argues this conclusion was error because the widespread use of the term Heartland in any context renders the Animal Clinic's mark "extremely weak."

As with its challenges to the district court's findings of actual confusion, the SPCA's arguments as to the remaining likelihood of confusion factors amount to a simple invitation to re-assess the evidence before the district court. This exceeds the scope of this court's review. *La Resolana*, 555 F.3d at 1177.

D.    Other Preliminary Injunction Factors

Finally, the SPCA argues the district court abused its discretion in balancing the harms when determining whether to grant a preliminary injunction. In particular, the SPCA argues the district court erred by discounting the harms it would suffer as a result of an injunction because it brought such harms upon itself. This court has previously concluded self-inflicted harm can weigh in favor of granting a preliminary injunction. *See Davis v. Mineta*, 302 F.3d 1104, 1116

-14-

(10th Cir. 2002). Moreover, the district court also concluded the potential harm to the SPCA from an erroneously granted injunction was mitigated by requiring the Animal Clinic to post a surety bond. The SPCA's arguments on appeal therefore fall well short of demonstrating the district court's judgment was arbitrary, capricious, whimsical, or manifestly unreasonable. *RoDa Drilling Co.*, 552 F.3d at 1208.

## IV.    Conclusion

For the foregoing reasons, the order of the district court is **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge